Andrew SASSER *v.* STATE of Arkansas

CR 94-933 902 S.W.2d 773

Supreme Court of Arkansas
Opinion delivered July 17, 1995

*Charles A. Potter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Andrew Sasser, appeals the judgment and commitment order of the Miller County Circuit Court filed May 4, 1994 convicting him of capital felony murder, Ark. Code Ann. § 5-10-101 (Repl. 1993), and sentencing him to death by lethal injection. For his sole point of appeal,

appellant argues the admission of certain testimony regarding prior crimes committed by him was reversible error because the trial court abused its discretion in determining the probative value of the evidence exceeded its prejudicial effect. A.R.E. Rule 403. The trial court admitted the testimony pursuant to A.R.E. Rule 404(b)[1] as proof of appellant's *modus operandi* and intent. We find no merit to appellant's argument and affirm.

## BACKGROUND FACTS

The state charged appellant with capital felony murder for causing the death of Ms. Jo Ann Kennedy, on or about July 12, 1993, in the course of or in immediate flight from his commission or attempt to commit the victim's rape or kidnapping under circumstances manifesting extreme indifference to the value of human life. At the time of her death, the victim was working alone as the store clerk at the E-Z Mart in Garland (also referred to in the record as "Garland City"). The autopsy report showed the victim died of multiple stab and cutting wounds and blunt force head injuries, and that no anal or vaginal injury or any spermatozoa were present.

Following *voir dire* and immediately preceding the trial's commencement, the state announced, *in camera*, that it intended to offer evidence of prior crimes committed by appellant in 1988 at an E-Z Mart in Lewisville against its store clerk, Ms. Jackie Carter, for which he was convicted of second degree battery, kidnapping and rape. The state relied upon Rule 404(b) and this court's decision reported as *Thrash* v. *State*, 291 Ark. 575, 726 S.W.2d 283 (1987)[2], and offered the evidence to prove appel-

---

[1]Rule 404(b) provides:

Character evidence not admissible to prove conduct, exceptions — Other crimes. — . . . .

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[2]In *Thrash*, this court held evidence of a burglary and aggravated robbery allegedly committed by the appellant subsequent to his commission of the crime of capital felony murder for which he was on trial was properly admitted under Rule 404(b) to show a plan and a *modus operandi*.

lant's *modus operandi* and intent. The state enumerated several points of similarity between the circumstances of the present crime and the 1988 crimes. Appellant objected, arguing "one previous crime does not a pattern make" and that the evidence had no probative value, only prejudicial effect. The trial court held *Thrash* was controlling, found the proposed testimony to be "more — than prejudicial," and ruled it admissible.

At the jury trial, appellant's guilty plea was not accepted by the trial court due to the state's refusal to waive the death penalty. At the trial's commencement, appellant stipulated that he caused the death of the victim while in the possession of and while driving his brother's pickup truck. Other stipulated facts included: appellant stopped at the E-Z Mart in Garland City two or three times to buy chips and to use the telephone between the hours of 3:00 p.m. on July 11, 1993 and approximately 12:00 a.m. on July 12, 1993; the victim was discovered nude from the waist down; and the pants and panties found in the E-Z Mart's men's bathroom were hers.

The state's first witness at trial, Jeanice Pree, testified she and her mother, Gloria Jean Williams, lived across the street from the Garland City E-Z Mart. Pree testified she had an unobstructed view of the store. Pree testified she also worked at the E-Z Mart and believed its front door was locked at 12:00 midnight and thereafter customers were required to use a drive-through window. Pree testified she was sitting on her couch watching television when she looked out her window, saw the victim and a man behind the store counter and assumed he was a friend of the victim. Pree testified she looked back and saw the victim and the man coming to the store's front door. Pree testified she could tell the victim was being forced to come out because it looked like her hands were behind her back. Pree testified she telephoned 911. The police dispatcher testified he received Pree's 911 telephone call at approximately 12:46 a.m. on July 12, 1993, and that she stated "there was a woman that she believed was being killed at the E-Z Mart, being drug through the window."

Williams testified she watched the E-Z Mart from the window in her house while her daughter (Pree) telephoned 911. Williams testified she saw a truck leave the store, and then the victim "came around from the side of the E-Z Mart. She reached for the door and she just collapsed, right there."

Miller County Sheriff's Deputy Jim Nicholas testified the victim was found lying just outside the E-Z Mart door on the sidewalk, and appeared to be dead. Nicholas testified the victim was nude from the waist down, and what appeared to be her panties and pants were located in the men's restroom of the store. Nicholas testified one of the victim's shoes was in the front aisle and one behind the counter, and a large wad of hair was found behind the cash register near the drive-through window. Nicholas testified blood spatters were observed at the drive-through window, on the store's "outside aisles," counter, and on the men's bathroom wall. Nicholas testified the drive-through window was open. Numerous items of physical evidence and photographs were introduced into evidence through the testimony of Nicholas and Miller County Sheriff's Department Investigator Toby Giles, including a photograph of the drive-through window and cash register area showing two plastic containers of nachos.

Arkansas State Police Investigator Robert Neal testified he and Miller County Sheriff H.L. Phillips interrogated appellant at the Lafayette County Sheriff's Office in Lewisville for approximately two hours beginning around 7:45 p.m., on July 12, 1993. Appellant's tape recorded statement and a transcript of the same were introduced at trial and provided as follows. Appellant stated he drove up to the window at the Garland City E-Z Mart and ordered nachos from the victim. He described the victim as a "lady . . . [who] had an attitude" and was angry because someone else had ordered nachos, then failed to pick up the order. Appellant stated the victim tried to sell him two orders of nachos, but he declined. Appellant stated they argued and the victim slammed the drive-through window on his hand. Appellant stated he jerked the window open whereupon the victim cut him with an knife-like object with a blade. Appellant stated he grabbed the victim and she jerked him through the drive-through window. Appellant stated they scuffled, moving from the drive-through window area, down the counter area, out into the store's interior, back to the store office at the rear of the store, and up to the potato chip rack at the front of the store. Appellant stated the victim opened the store's front door, they exited the store and the victim followed him to his pickup truck, still fighting. Appellant stated he entered the vehicle and left.

Appellant stated he did not recall going into the E-Z Mart's

restrooms but that he "had to go back there." Appellant stated the victim repeatedly hit him with her fists while they scuffled. Appellant stated he wrested the victim's knife-like object from her and used it to hit her, finally dropping the object near the pickup truck. Appellant stated he did not know why the victim's clothes were removed. When asked whether he did not remove the victim's clothes or did not remember doing so, he replied: "No sir." Appellant stated he did not try to rape the victim or to rob her.

The state's final witness, Ms. Carter, testified appellant attacked and raped her on April 22, 1988 at the E-Z Mart Store in Lewisville. Carter testified she was the only employee on duty when appellant entered the store at approximately 1:00 a.m. and purchased cigarettes, returned fifteen minutes later and purchased a soft drink, then returned five minutes later, asked to use the telephone and stated he had had a wreck on his motorcycle. Carter testified appellant then stood in the store after stating he was waiting on his wife to pick him up. Carter testified that, at approximately 1:35 a.m., a truck drove up and appellant went outside to talk to its occupants. Carter testified she moved from behind the cash register and began putting up items in the freezer when appellant approached her from behind and hit her on the back of the head with a soft drink bottle. Carter testified she and appellant struggled and he continued to hit her, then forced her to a utility\bathroom located at the back of the store. Carter testified another man approached and appellant decided to take her out of the store. Carter testified appellant forced her out of the store, picked up his bicycle, and pushed Carter and the bicycle into an alley. Carter testified that, when the other man drove by, appellant forced her across the street, told her to pull down her clothes, pulled down his own clothes, and raped her. Carter testified appellant then told her he should not have done it and should kill her whereupon she begged him not to and agreed to say a truck had dropped her off and appellant had found her. Carter testified appellant forced her back to the store where the police were waiting. Carter testified that, when she gained the opportunity to speak privately to a policeman, she identified appellant as her attacker.

The state then rested and the defense presented no evidence. The jury returned a verdict of guilty; the verdict did not identify

the predicate offense or offenses the jury found as a required element of the crime of capital felony murder. The state then introduced, for the jury's consideration in the sentencing phase, a certified copy of appellant's 1988 convictions for Carter's second degree battery, kidnapping and rape. The jury found one aggravating circumstance: that appellant had previously committed another felony an element of which was the use or threat of violence to another person or creating a substantial risk of death or serious physical injury to another person. The jury found three mitigating circumstances: that appellant would be a productive inmate, had a supporting family of him as an inmate, and had stipulated he caused the victim's death. The jury found the aggravating circumstance outweighed any mitigating circumstances and justified the death sentence.

## ADMISSIBILITY OF CARTER'S TESTIMONY

In admitting Carter's testimony, the trial court effectively made two separate evidentiary determinations: the first under Rule 404(b) on the issue of the relevance and purpose of the challenged evidence, and the second under Rule 403 which bars evidence, although relevant, if its probative value is substantially outweighed by a danger of unfair prejudice. *See Neal v. State*, 320 Ark. 489, 898 S.W.2d 440 (1995); *Thrash*, 291 Ark. 575, 726 S.W.2d 283; *Snell v. State*, 290 Ark. 503, 721 S.W.2d 628 (1986), cert. denied, 490 U.S. 1075 (1989); *White v. State*, 290 Ark. 130, 717 S.W.2d 784 (1986).

Appellant argues the trial court's ruling on the Rule 403 issue was error because the testimony was offered solely for prejudicial effect. This argument is based upon appellant's contentions that: (1) the state's case was "virtually a sure thing" before Carter's testimony was given as the final prosecution witness, (2) the possible prejudice resulting from erroneous admission of evidence in the present case is distinguishable from cases where no death penalty was sought, such as *Thrash*, and (3) the trial court failed to instruct the jury regarding the specific purposes for which Carter's testimony was admissible under Rule 404(b).

Certainly the state's capital felony murder case against appellant was founded upon and strengthened by the stipulated fact that appellant killed the victim. However, as noted, the charged crime also required the state to prove beyond reasonable doubt

that the killing occurred in the course of or in immediate flight from appellant's commission or attempt to commit the victim's rape or kidnapping under circumstances manifesting extreme indifference to the value of human life. None of these additional required elements of the charged crime was stipulated to or confessed by appellant.

Conflicting evidence pertinent to the alleged kidnapping and attempted kidnapping predicate offenses was introduced when the testimonies of Ms. Pree and Ms. Williams are compared with appellant's custodial statement. Ambiguous evidence was admitted pertinent to the alleged rape and attempted rape predicate offenses inasmuch as the victim was discovered nude below the waist but the autopsy report showed no evidence of rape and appellant denied raping or attempting to rape the victim in his custodial statement.

Further, the state's case against appellant included circumstantial evidence of blood, hair, fiber, and other physical items introduced at trial as exhibits to various forensic reports prepared by the FBI and the State Crime Lab. Although appellant stipulated to the admissibility of these reports analyzing the circumstantial evidence, he did not stipulate as to the truthfulness of any conclusions or findings of fact contained therein.

■ On this record, we cannot conclude the state's capital felony murder case was "virtually a sure thing" at the time Carter took the witness stand. Therefore we reject appellant's first contention that the testimony was offered solely for prejudicial effect.

■ Next, appellant states the possible prejudice resulting from the erroneous admission of evidence is greater in death penalty cases. The conclusion he draws from this observation, apparently, is that Carter's testimony was offered solely for its prejudicial effect because the state sought the death penalty in this case. Appellant's second contention fundamentally misinterprets Rule 403, which, as noted above, excludes relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. The prejudice referred to in Rule 403, however, denotes the effect of the evidence upon the jury, not the defendant. *See generally* 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 403[03] (1994). Hence the nature

of the sentence that may be imposed in the event of the defendant's conviction is not a factor in the trial court's Rule 403 analysis. Therefore, because it is based upon a false premise, we reject appellant's second contention that the testimony was offered solely for prejudicial effect.

 Finally, although appellant was entitled to a cautionary instruction to the jury limiting the purposes for which it should have considered Carter's testimony, his failure to request the instruction precludes our consideration of this argument on appeal. *Lindsey*, 319 Ark. 132, 890 S.W.2d 584 (1994); *White*, 290 Ark. 130, 717 S.W.2d 784. Therefore we reject appellant's third and final contention that the testimony was offered solely for prejudicial effect.

 As with other evidentiary determinations, the balancing of probative value against prejudicial effect is a matter left to the trial court's sound discretion. *Neal*, 320 Ark. 489, 898 S.W.2d 440; *Robinson* v. *State*, 314 Ark. 243, 861 S.W.2d 548 (1993). In this case, the trial court held Carter's testimony concerning appellant's 1988 crimes of second degree battery, kidnapping and rape was probative of appellant's intent and *modus operandi* in the present case under Rule 404(b). We are mindful of the state's burden in this case to prove one or more of the predicate offenses, the commission or attempt to commit the victim's rape or kidnapping. We conclude the 1988 crimes bore sufficient similarity to the present crime to justify proof of the former as probative of appellant's intent to commit the predicate offenses of the latter. *Brenk* v. *State*, 311 Ark. 579, 847 S.W.2d 1 (1993); *Snell*, 290 Ark. 503, 721 S.W.2d 628. The record in this case shows that on December 31, 1992, less than six months before the commission of the present crime, appellant was discharged from the Arkansas Department of Correction having completed his sentence for his 1988 crimes. Both the 1988 crimes and the present crime involved female victims on duty as employees of E-Z Mart stores located in neighboring communities. Both were committed shortly after midnight by appellant, without accomplices, after he had purchased items from the victim at the store and had made several trips to the store on the day of the attack. Both involved a physical struggle between appellant and the victim that started in one part of the store and moved to other parts. Both involved sexual implications. In 1988, Carter pleaded

for her life, whereas the victim in the present case was killed. In 1988, appellant apparently travelled to the E-Z Mart on a bicycle, whereas he borrowed his brother's pickup truck in the present case. Clearly, the challenged testimony had probative value which, we conclude, was not substantially outweighed by the danger of unfair prejudice. *See* Rule 403.

■ The dissent contends the challenged testimony was inadmissible under Rule 404(b) because the 1988 crimes were not sufficiently similar to the present crime, and, therefore, the trial court need not have reached the Rule 403 issue. Appellant articulates no argument to this court that the challenged testimony was inadmissible under Rule 404(b). However, pursuant to Ark. Sup. Ct. R. 4-3(h), we consider this issue. The degree of similarity between the circumstances of prior crimes and the present crime required for admission of evidence under Rule 404(b) is a determination that affords considerable leeway to the trial judge, and may vary with the purpose for which the evidence is admitted. *See* 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 112, n. 4 and accompanying text (2d ed. 1994) ("To be probative, prior criminal acts must require an intent similar to that required by the charged crime, although it is usually said that the prior crime need not closely resemble the charged crime."); 1 John W. Strong, *McCormick on Evidence* § 190, n. 31 and accompanying text (4th ed. 1992) ("The similarities between the act charged and the extrinsic acts [admitted to show the act charged was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge] need not be as extensive and striking as is required . . . [to show *modus operandi*]"). *See generally* 2 Jack B. Weinstein, et al., *Weinstein's Evidence* ¶ 404[12] (1995); 2 John Henry Wigmore, *Evidence in Trials at Common Law* § 302 (Chadbourn rev. 1979). On this record, we conclude the similarity between the circumstances of the 1988 crimes and the predicate offenses of the present crime was sufficient to support the trial court's admission of the challenged testimony under Rule 404(b) as independently relevant proof of appellant's intent to commit the predicate offenses.

■ This court has repeatedly ruled that trial courts have broad discretion in deciding evidentiary issues, including the admissibility of evidence under Rules 403 and 404(b), and that those decisions will not be reversed absent an abuse of discre-

tion. *See, e.g., Neal,* 320 Ark. 489, 898 S.W.2d 440; *Lindsey,* 319 Ark. 132, 890 S.W.2d 584. We conclude appellant has failed to show an abuse of discretion.

## COMPLIANCE WITH RULE 4-3(h)

■ We conduct no comparative proportionality review with respect to the death penalty in this case. *See Williams v. State,* 321 Ark. 344, 902 S.W.2d 767 (1995). In accordance with Ark. Code Ann. § 5-4-603(d) (Repl. 1993), we conclude no erroneous finding of any aggravating circumstance with respect to the death penalty was made by the jury. In accordance with Ark. Sup. Ct. R. 4-3(h), the transcript has been examined for prejudicial errors objected to by appellant but not argued on appeal and we conclude no such errors occurred.

The judgment is affirmed.

HOLT, C.J., and DUDLEY and NEWBERN, JJ., dissent.

JACK HOLT, JR., Chief Justice, dissenting. I respectfully dissent. The sole question on appeal is whether the trial court abused its discretion by admitting testimony concerning other crimes committed by appellant Andrew Sasser against a convenience store operator some four years earlier to show modus operandi and intent. The trial court committed error in allowing this evidence under A.R.E. 404(b), and I would reverse and remand for a new trial.

Arkansas Rule of Evidence 404(b) provides as follows:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

For "other crimes" evidence to be admissible, it must have independent relevancy to the offense for which the defendant is standing trial, but it need not be tied to the list of permissible purposes delineated in the rule. *Neal v. State, supra; see also White v. State,* 290 Ark. 130, 711 S.W.2d 784 (1986). Admission of

such evidence for proving a method of operation has been upheld by this court as a permissible exception to Rule 404(b). *See Diffee* v. *State*, 319 Ark. 669, 894 S.W.2d 564 (1995); *Thrash* v. *State*, 291 Ark. 575, 726 S.W.2d 283 (1987). Once the trial court determines that the evidence is independently relevant, it must then perform the necessary balancing under A.R.E. 403, which provides that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

Although the lower court properly examined the evidence on the basis of both rules, and even though the method of operation (modus operandi) as well as proof of intent or plan is a legitimate basis for introducing evidence of other crimes, the trial court need not have balanced the evidence under Rule 403, as Ms. Carter's testimony was not relevant under any of these categories.

This court recently examined the admission of other crimes for the purpose of establishing a method of operation in *Diffee* v. *State, supra*. To introduce other unrelated acts to show a method of operation, two requirements must be met: "(1) both acts must be committed with the same or strikingly similar methodology; and (2) the methodology must be so unique that both acts can be attributed to one individual." *Diffee* v. *State*, 319 Ark. at 675, 894 S.W.2d at 567 (citing *Frensley* v. *State*, 291 Ark. 268, 274, 724 S.W.2d 165, 169 (1987)); *See also* Edward J. Imwinkelreid, *Uncharged Misconduct Evidence*, §§ 3.10 to 3.12 (1984). Neither requirement was met in this instance.

The general purpose of showing a method of operation is to identify the accused as the perpetrator. *See Diffee* v. *State*, 319 Ark. at 675, 676, 894 S.W.2d at 568 (citing Imwinkelreid, *supra*). Here, Sasser stipulated to a number of facts involving the homicide, including the fact that he caused Ms. Kennedy's death. There was no issue as to the identity of the perpetrator, and thus there was no necessity for proving a method of operation. Moreover, the incident involving Ms. Carter fails to meet the required elements for establishing modus operandi.

As noted by Professor Imwinkelreid, and as cited in *Diffee*, *supra*, the degree of similarity between the two incidents must be very strict in order to establish identity. Granted, the unre-

lated acts in this case share several facts in common, as both victims were convenience store clerks, both were attacked late at night, and both were beaten and disrobed. Even so, the similarity between the facts surrounding the commission of the two crimes, one of murder and the other of second degree battery, rape and kidnapping arises to the high degree of similarilty required for the purpose of showing a method of operation.

The second requirement, uniqueness of methodology, is clearly absent. For purposes of establishing a method of operation, the methodology used by the perpetrator must be so unique that it independently identifies the accused as the perpetrator. Courts and commentators have stated the methods must be "bizarre," "highly characteristic," "distinguishing," . . . "exceptional," "a fingerprint," and other such terms as would single out one person as being the unmistakable assailant. *Diffee* v. *State*, 319 Ark. at 677, 894 S.W.2d at 568 (*citing* Imwinkelreid, *supra.*); *See also Frensley* v. *State, supra.* This case is distinguishable from *Thrash* v. *State, supra*, upon which the trial court relied in making its ruling. In that case, the defendants used wigs and particular disguises to rob a liquor store and a truck driver. The disguises provided an element of uniqueness that marked the defendants as the perpetrators of both crimes. Here, there is nothing unique or distinctive about the way Sasser carried out the crimes so as to justify the admission of the previous incident for purposes of establishing a method of operation.

Lastly, admission of the evidence to show plan or intent was also error, for this court cannot logically assume that, because Sasser had previously committed the offenses of second degree battery, rape, and kidnapping involving a convenience store clerk, that this constituted evidence of a plan or intent on his part to commit the murder of Ms. Kennedy. The facts in this case are unlike those in *Brenk* v. *State*, 311 Ark. 579, 847 S.W.2d 1 (1993), where the defendant was accused of killing his wife, dismembering her body, and leaving her torso in a cooler, which was found floating in Lake Norfolk. At trial, Brenk's former wife was allowed to testify that Brenk had tried to kill her and threatened her that he would kill her, cut her body to pieces, and scatter the remains. We held that, "given the similarity of the circumstances of [the two deaths], and the specific threats made to Jackie Brenk, although several years earlier," the threats were admissible to

show Brenk's intent, plan, and identity. *Brenk* v. *State*, 311 Ark. at 585, 847 S.W.2d at 6. In particular, we upheld the admission of testimony in *Brenk* due to the similarity of the circumstances between what Brenk told his ex-wife and what actually happened to his wife. *Id.*

Here, the majority is wrong in concluding that there was sufficient similarity of circumstances or threats to permit Ms. Carter's testimony into evidence to show that Sasser had a plan or intent to murder Ms. Kennedy. Sadly enough, convenience stores, which are quite often open all night, are staffed by employees who are subject to robbery, attack, sexual assault, rape, and death. The victims are often threatened with death by their attackers in an attempt to ensure their silence. Neither Sasser's threats nor his actions, as previously discussed, were carried out under compellingly similar circumstances to support the inference of an intent to kill Ms. Kennedy. In my opinion, admission of the evidence on this basis was prejudicial error which necessitates a retrial.

DUDLEY and NEWBERN, JJ., join this dissent.