Gerland Lee GASS, a/k/a Gerl GASS *v.* STATE
of Arkansas

CA CR 85-95                                    706 S.W.2d 397

Court of Appeals of Arkansas
Division I
Opinion delivered March 26, 1986
[Rehearing denied April 30, 1986.*]

* Cloninger, J., not participating.

*Crawford, Hays & Crawford*, by: *Robert H. Crawford*; and *Henry & Mooney*, by: *John R. Henry*, for appellant.

*Steve Clark*, Att'y Gen., by: *Connie Griffin*, Asst. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Chief Judge. Gerland Lee Gass

appeals from his conviction of the crime of conspiracy to deliver a controlled substance for which he was sentenced to a term of thirty years in the Department of Correction and a fine of $15,000. We find no error and affirm the conviction.

At approximately 9:15 p.m. on August 2, 1984, L. C. Sandefer was travelling from Batesville to the Sulphur Rock community when he encountered a Lincoln Continental occupied by two men and being driven in an erratic manner. The Lincoln was being driven very slowly and crossed over the yellow line several times. He observed that the brake lights on the Lincoln came on several times for no apparent reason. By driving his truck very close to the rear bumper of the Lincoln he was able to ascertain that the car was licensed in Georgia and bore the license plate number GLK-310. Because of the behavior of the driver, Sandefer reported to the sheriff's office that the driver was probably intoxicated and ought to be checked out.

The next morning, David Aldridge, a deputy sheriff received a telephone call from an individual who stated that he and a companion, while driving along the highway, had seen a bank bag lying in a ditch by the side of the road. The officer went to the scene and obtained the bank bag. He described it as a zipper-type bag with a lock on the end of it and bearing the notation of "Hamilton County" and the name of a bank. The officer stated that he had no idea where Hamilton County was at that time, took the bag to the sheriff's office, and cut it open to determine what it contained. Inside he found a freezer bag containing a white powdery substance which was field tested and found to be cocaine. The persons finding the bag stated that they had found it at approximately 7:00 a.m. and delivered it to Officer Aldridge within an hour.

Charles Rutledge, an officer of the sheriff's department, stated that after learning the bag contained cocaine, he had the persons who found it take him to the location at which it was found. The bag was found in the area in which Sandefer had reported seeing the Lincoln the night before. Bryan Everett reported to the sheriff's office that on the morning of August 5, 1984, he and Sandefer observed the same Lincoln Continental on three occasions in the area where the bag had been found. He further reported that he again saw the same vehicle that after-

noon parked on the side of the road and observed two people in the ditch who acted as if they "were looking for something." The sheriff's office then directed all of its officers to locate the Lincoln bearing the Georgia license number and apprehend its occupants. Later that afternoon the officers located the car, stopped it, and took its occupants into custody. An individual named Wofford was driving and the appellant was the only passenger. At the time of the stop the officers noticed mud on the trousers and shoes of both of the occupants and a "white powdery" substance on the appellant's shirt. No warrant had been issued for the arrest.

At the jail, the parties were required to disrobe and change into prison uniforms. Wofford emptied his pockets and the content disclosed two keys to Room 405 of the Powell Motel and a large sum of cash. A third key, bearing the inscription "No. ARCO7," was also discovered at that time. Wofford stated that they key was to a motel room in Mississippi where he had spent the night and had forgotten to return the key. It was later determined that this key fit the bag containing the cocaine. The powdery substance on appellant's shirt was determined to be cocaine. In the pocket of appellant's shirt was found a piece of paper bearing the name of Joseph McKinney and a Mountain View, Arkansas, telephone number.

Acting on what they then knew, the officers sought and obtained a warrant authorizing the search of the motel room and the Lincoln for controlled substances, weapons, and drug paraphernalia. Pursuant to the warrant the vehicle was searched and nothing was discovered. The officers found a number of weapons and other items in the motel room, but no cocaine or anything else linking the appellant to the conspiracy. None of the items seized in the motel room were introduced at trial. The officers remained in the motel room for a period of time during which several incoming telephone calls for the appellant and Wofford were received and electronically recorded. These recordings were not used in the trial and did not lead to any other evidence of the appellant's guilt.

While in the motel room, one of the officers called Joseph McKinney at the telephone number found in appellant's shirt pocket, located his whereabouts, and subsequently took him into custody. McKinney testified with immunity at the trial as to his

involvement with the appellant, Wofford, and others in a conspiracy to sell the 2.2 pounds of cocaine found in the money bag. McKinney also testified that he had received a telephone call from the appellant informing him that one of the co-conspirators had thrown the "stuff" out of the window while their vehicle was being chased by the police and the appellant asked him to go with them to Batesville to recover it.

On appeal the appellant does not contend that the evidence was insufficient to establish the conspiracy charge, but only that the evidence established that he had withdrawn from the conspiracy before the arrest and that the trial court erred in not suppressing much of the State's evidence which established the existence of the conspiracy.

The appellant asserts that the bank bag found in the ditch was either abandoned property or found property. He contends that if it be considered abandoned property he could not be convicted of conspiracy because, by throwing away the object of the conspiracy, he had renounced the criminal purpose. In the alternative, he contends that if it be considered found property, the opening of the locked container constituted an illegal search and seizure and that all evidence of it or flowing from it should have been suppressed as "fruits of the poisonous tree." We do not agree.

■■ Ark. Stat. Ann. § 41-710 (Repl. 1977) provides that renunciation of the criminal purpose is an affirmative defense to a prosecution for criminal conspiracy if a conspirator (1) thwarts the success of the conspiracy under circumstances manifesting a complete and voluntary renunciation of his criminal purpose, or (2) terminates his participation in it and gives timely warning to the police or makes a substantial effort to prevent the commission of the offense under circumstances manifesting a complete renunciation of the conspiracy. The appellant's argument presupposes that he was the person that discarded the bag and that he did so in an effort to thwart the conspiracy or terminate his participation in it. There is not a scintilla of evidence on which a finding that any of these requirements had been met could be based. Joseph McKinney, one of the co-conspirators, testified that the appellant was not the one who discarded the bag. He stated that the appellant told him that he had "sent a guy up here

with the stuff and on getting to Batesville the guy had been chased or followed out of town and thrown the stuff out of the car." He further testified that on the date of the arrest the appellant and a companion came to his house and asked him to go to Batesville with them to look for the "stuff that was throwed out of the car. . . . They said they had to go back to Batesville and look for the stuff, that they had to find it." Unless a conspirator produces affirmative evidence of withdrawal, his participation in the conspiracy is presumed to continue until the last overt act by any of the conspirators. *United States* v. *Panebianco*, 543 F.2d 447 (2d Cir. 1976). Our review of the record discloses no affirmative evidence of appellant's withdrawal. To the contrary, the evidence shows that until shortly before his arrest he and at least one other co-conspirator were seeking to regain possession of the cocaine in order to continue their criminal purpose.

Appellant next contends that the trial court erred in not suppressing evidence of the cocaine found in the locked container. He argues that the evidence was obtained as a result of an illegal warrantless search and seizure. We find no merit in this contention. Appellant's pretrial motion to suppress evidence made no mention of the content of the container or request that evidence of it be suppressed. That motion raised questions concerning the circumstances surrounding the stop and arrest and the legality of the warrant issued for the search of the Lincoln and motel room. At the commencement of the trial, appellant orally moved for suppression of evidence obtained from the search of the bag, but offered no evidence in support of that motion.

The trial court correctly ruled that appellant had no standing to challenge the legality of the search because he never asserted a proprietary or possessory interest in the container or its content, or that he was at or near the scene when it was seized, and possession of the cocaine at the time of the seizure is not an essential element of the crime of criminal conspiracy to deliver a controlled substance. *Brown* v. *United States*, 411 U.S. 223 (1973); *United States* v. *West*, 557 F.2d 151 (8th Cir. 1977). In *Brown*, the appellant was accused of criminal conspiracy to transport stolen goods in interstate commerce. The object of the conspiracy was seized during a search of a co-conspirator's premises pursuant to a defective warrant. At the time of the search, the appellant was in custody in a different state. The

appellant did not assert a proprietary or possessory interest in the seized contraband. The conspiracy statute under which he was charged was similar to our own and possession of the contraband was not an essential element of the offense. There the Court said:

> In deciding this case, therefore, it is sufficient to hold that there is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure.

*Brown*, 411 U.S. at 229. *Brown* also declared that the proper manner of asserting the proprietary interest or otherwise establishing standing to challenge the legality of a search is at a pretrial hearing at which the claims can be made without danger of self-incrimination and that one who fails to do so has no standing to make the challenge.

Appellant's reliance on *United States* v. *Chadwick*, 433 U.S. 1 (1977) and *Arkansas* v. *Sanders*, 442 U.S. 753 (1979) and their progeny is misplaced. Those cases are distinguishable from the instant one in several material respects. In those cases, the seizure was made at a time when the appellants were in actual or constructive possession of the container in question and were at or near the scene when the seizure was made. Also, in both *Chadwick* and *Sanders*, the appellants were charged with possession of a controlled substance and proof of possession of the contraband was an essential element of the offense. Furthermore, the accused in both of those cases asserted and established a possessory or proprietary right in the container and standing to challenge the seizure and subsequent warrantless search at a proper pretrial hearing. Here the appellant did not do so.

The appellant next contends that the trial court erred in not suppressing all evidence obtained at or as a result of the felony stop and arrest of the appellant and his companion because the stop and arrest were without probable cause and illegal. He argues that evidence seized or obtained as a result of the arrest was "fruit of the poisonous tree." He contends that the suppressed

evidence should include the evidence of cocaine on appellant's shirt, the address and telephone number of McKinney found in his shirt pocket leading the officers to McKinney's damaging evidence of the conspiracy, and the keys to the money bag and the motel room found on the person of his co-defendant, Wofford.

A.R.Cr.P. Rule 4.1(a)(i) provides that a law enforcement officer may arrest a person without a warrant if he has reasonable cause to believe that person has committed a felony. Rule 4.1(d) provides that a warrantless arrest by an officer not personally possessed of information sufficient to constitute reasonable cause is valid where the arresting officer is instructed to make the arrest by a police agency which collectively possesses knowledge sufficient to constitute reasonable cause. Reasonable cause exists where facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient within themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested. *Gaylor* v. *State*, 284 Ark. 215, 681 S.W.2d 348 (1984). The test of probable cause for the stopping of an automobile rests upon the collective information of the police officers and not upon the information of the officer actually stopping the vehicle. *Tillman* v. *State*, 271 Ark. 552, 609 S.W.2d 340 (1980).

Probable cause is simply a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man to believe that the accused has committed a felony. The quantum of proof required to support a conviction is not required. Our courts have committed themselves to the reasonable, common-sense approach to these determinations and arrests are to be appraised from the viewpoint of prudent and cautious police officers at the time the arrest is made. Constitutional standards permit common-sense, honest judgment by police officers in their probable cause determinations. *Reed* v. *State*, 9 Ark. App. 164, 656 S.W.2d 249 (1983).

On appeal, all presumptions are favorable to the trial court's ruling on the legality of an arrest and the burden of demonstrating errors rests on the appellant. *Sanders* v. *State*, 259 Ark. 329, 532 S.W.2d 752 (1976). When we indulge these presumptions and consider the totality of the circumstances

leading up to the warrantless arrest, we conclude that there was sufficient evidence to sustain the finding of probable cause for the arrest. We further conclude that as the custodial arrests of the appellant and his companion were based on reasonable cause, the limited search of their persons incident to the arrests required no additional justification. *Baxter* v. *State*, 274 Ark. 539, 626 S.W.2d 935 (1982). The court was therefore correct in denying the motion to suppress the evidence flowing from the seizure of appellant's shirt and the paper containing the name and telephone number of McKinney found in its pocket. We likewise conclude that the warrantless arrest of Wofford was upon probable cause and lawful, and the motel keys and key to the lock on the bank bag found on his person were lawfully seized. In any event, the appellant would have no standing to assert Fourth Amendment rights as to any violation of the rights of Wofford. *United States* v. *Bell*, 651 F.2d 1255 (8th Cir. 1981); *United States* v. *Baucom*, 611 F.2d 253 (8th Cir. 1979).

Appellant finally contends that the trial court should have suppressed all evidence obtained as a result of the warrant issued for the search of the motel room under the fruit of the poisonous tree doctrine. He contends that the search warrant was obtained as a result of illegally seized evidence and the officers' "misrepresentations and reckless disregard for the facts" when seeking the warrant. Appellant concedes that there is a presumption of validity with respect to the affidavit supporting the search warrant and that the attack upon it must be by allegations of deliberate falsehood or reckless disregard for the truth, accompanied by proof of those facts. Notwithstanding this, the appellant has not favored us with an abstract of the affidavit which he seeks to attack. We do not know what information was sworn to before the magistrate. That which appellant contends reflects a reckless disregard for the facts is nothing more than a few minor inconsistencies in the testimony of the police officers at the trial on the merits. Furthermore, none of the articles seized in that search were introduced into evidence at the trial.

Appellant's allegation that the officers acted beyond the scope of the warrant because they electronically taped some telephone conversations while in the motel room is also without merit. Although the officers did listen to incoming telephone calls, the appellant does not point out to us that the content of any of

them was used as evidence in the trial. While in the room, the officers did call McKinney at the number found in appellant's shirt pocket at the time the search incident to the arrest was made. The mere fact that the officer made the telephone call while in the motel room, however, could not be violative of any Fourth Amendment guarantee. Although that conversation was recorded, the recording was not used at the trial, as McKinney testified in person. Since nothing discovered as a result of the search pursuant to the warrant was introduced at trial, no prejudice could have resulted even had the search been unlawful.

We affirm.

GLAZE and COOPER, JJ., agree.