Michael Dennis MOCK, Leigh Ann MOCK and Mark
Allen MOCK *v.* STATE of Arkansas

CA CR 86-164                                725 S.W.2d 1

Court of Appeals of Arkansas
Division I
Opinion delivered March 4, 1987

118

*Donald J. Adams*, for appellants.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Judge. Michael, Mark, and Leigh Ann Mock appeal from their convictions of various criminal offenses, advancing a number of points for reversal. Because the three appellants were convicted of different offenses and have filed a common brief, only an initial recitation of the facts can fully bring the issues into focus.

In October of 1983, the Arkansas State Police were investigating Mark and Michael Mock based upon information that they were engaged in the activity of manufacturing controlled substances at their residence near Jasper in Newton County,

Arkansas. On October 11, 1983, the officers were contacted by a reliable informant who told them that he had purchased both marijuana and amphetamines from the appellants in the past and had done so at their residence within the past seventy-two hours. The officers had also received information from the Oklahoma Bureau of Narcotics that the appellants had made large purchases of chemicals from companies in and around Tulsa. The chemicals purchased were known to the police to be commonly used in the manufacture of amphetamines. The officers further learned from the informant the manner in which the appellants made delivery of the controlled substances and a description of the vehicle used in making those deliveries.

On October 14, 1983, the officers were with the informant and taped a conversation between the informant and appellant Michael Mock concerning the purchase of amphetamines in which it was apparent that a delivery would be made within a short period of time. The officers then set up surveillance of the appellants' residence in Newton County. The informant was in contact with the appellants thereafter but was told that they could not "meet him" until later. On October 15, in a similarly taped conversation, appellant Mark Mock told the informant that he was leaving for the prearranged place of delivery in fifteen minutes. According to the informant, that conversation meant that they were going to deliver to him amphetamines at a prearranged place, the location of which was furnished to the officers. This information was communicated to those officers watching the appellants' home. A short time later, those officers observed appellant Mark Mock leave the house in a vehicle matching the description given by the informant, and head in the direction of the delivery location. A roadblock consisting of officers of Newton and Pope Counties and the Arkansas State Police was set up along that route inside Pope County. The appellant was stopped at that roadblock and ordered out of his vehicle. The officers stated that the appellant hesitated to do so and "made some movements around the side of his body." They then noticed that he was wearing a shoulder holster, removed him from the vehicle, and found an automatic pistol in the front seat of the vehicle. Also about his person and truck were found two

ounces of amphetamines, one ounce of marijuana, drug paraphernalia, and a chemical formula used in the manufacture of amphetamines. Appellant Mark Mock was then transported to the Pope County jail in Russellville, Arkansas. The Newton County officers then left to obtain a warrant to search the appellants' home.

Pursuant to the search warrant for the home of appellants Michael and Leigh Ann Mock, the officers found marijuana in varying amounts in several different places, bags containing a white powdery substance, and chemical paraphernalia. In the trailer occupied by appellant Mark Mock and his wife, Mitsi (not involved in this appeal), they found bags of marijuana, books on chemical compounds, scientific glassware, and other drug paraphernalia. They also found a number of explosives including plastic explosives, a quantity of TNT, and military-type booby traps.

All three appellants were charged with the crimes of conspiring to deliver a controlled substance, manufacture of a controlled substance, possession of such substances with intent to deliver, and criminal possession of explosives. Michael Mock was found guilty of the offenses of manufacturing a controlled substance, conspiring to deliver a controlled substance, and possession of such substances with intent to deliver. Mark Mock was found guilty of manufacturing a controlled substance, conspiring to deliver a controlled substance, possession of such substances with intent to deliver, and criminal possession of explosives. Leigh Ann Mock, wife of Michael Mock, was found guilty only of possession of a controlled substance. The three appellants have filed a common brief and have not attempted to direct their arguments at the rulings as to any particular appellant. We find no merit in any of the points advanced and address them in the same manner.

The appellants first contend that the trial court erred in not suppressing the evidence of contraband found on the person and in the truck of Mark Mock at the time of his arrest and all other evidence discovered as a result because there was no probable cause for his warrantless arrest or the search of his

vehicle.[1] Rule 4.1(a)(i) of the Arkansas Rules of Criminal Procedure provides that a law enforcement officer may arrest a person without a warrant if he has reasonable cause to believe that person has committed a felony. Reasonable cause exists where facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient within themselves to warrant a man of reasonable caution to believe that an offense is being or has been committed by the person to be arrested. The test of probable cause for the stopping of an automobile rests upon the collective information of the police, not merely upon the information of the officer actually stopping the vehicle. *Gaylor* v. *State*, 284 Ark. 215, 681 S.W.2d 348 (1984); *Gass* v. *State*, 17 Ark. App. 176, 706 S.W.2d 397 (1986). Probable cause is simply a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man to believe that the accused has committed a felony. The quantum of proof required to support a conviction is not required. Our courts have committed themselves to a reasonable, common-sense approach to these determinations and arrests are to be appraised from the viewpoint of prudent and cautious police officers at the time an arrest is made. *Gass* v. *State, supra.* On appeal, all presumptions are favorable to a trial court's ruling on the legality of an arrest and the burden of demonstrating error rests upon the appellant. When we indulge these presumptions and consider the totality of the circumstances leading up to the warrantless arrest, we conclude that there was sufficient evidence to sustain the finding of probable cause for the arrest. We further conclude that, as the custodial arrest of the appellant was based on reasonable cause, the search of his person and vehicle incident to that arrest

---

[1] Appellant Mark Mock was convicted in Pope County for the offense of possessing a controlled substance growing out of his arrest in that county. We affirmed that conviction in *Mark Mock* v. *State of Arkansas*, 20 Ark. App. 72, 723 S.W.2d 844 (1987). The issue of the legality of Mark Mock's arrest and the resulting search of his person and vehicle is before the court in the present case because the evidence obtained in that search partially formed the basis for the issuance of the warrant authorizing the search of the appellants' residence. Also, there is some variance between the two cases with respect to evidence of the events leading up to and surrounding Mark Mock's arrest. The recitation of facts in this opinion are those reflected by the record made in the Newton County case now under review.

required no additional justification. *Baxter* v. *State*, 274 Ark. 539, 626 S.W.2d 935 (1982); *Gass* v. *State, supra*; A.R.Cr.P. Rules 12.1(d) and 12.4(a). In any event, appellants Michael Mock and Leigh Ann Mock would have no standing to assert the fourth amendment rights of appellant Mark Mock. *Gass* v. *State, supra.*

The appellants next contend that the search of the home of appellants Michael and Leigh Ann Mock was illegal because it was made prior to the time the search warrant was delivered to the home, and that the articles obtained through this search should therefore have been suppressed. Mark Mock argues that the evidence obtained from the search of his trailer should likewise have been suppressed since there was no warrant and no voluntary consent for that search. Although the attorney general does not argue this point, we must initially note that the appellants have not pointed out to us, and we have been unable to find, where the trial court was asked to suppress the evidence found in the home of Michael and Leigh Ann Mock, or in the trailer occupied by Mark. Our examination of the record only discloses a motion to suppress those items found on the person of Mark Mock and in his vehicle at the time of the search incident to his arrest.

In any event, we find no merit to the arguments advanced by the appellants. According to the evidence, after Mark Mock was arrested in Pope County, several of the Newton County officers involved in that arrest proceeded directly to a judge's home to obtain a warrant to search the appellants' premises. Early in his testimony Officer Rodney Combs of the Arkansas State Police stated that he was informed that a search warrant had been issued and that he and other officers went into the residence before the warrant arrived. He did not state, however, that any search was made at the time of entry, and it is clear from the other evidence that no search was conducted prior to the arrival of a validly executed search warrant. In several other places in Combs' testimony he so indicated. Several of the other police officers who were returning with the warrant testified that the search was not in progress at the time the warrant arrived. Furthermore, Michael Mock himself testified that the police officers had the warrant when they first came into his home. When the testimony

with regard to the manner in which the search warrant was executed is examined in its entirety, it is clear to us, as it could have been to the trial judge, that it was properly executed and that no search was made until the warrant had been delivered at the appellants' place of residence.

■ The appellants also argue that the search warrant did not describe a trailer located on the property, but merely a "white frame residence and its curtilage." No request to suppress the evidence found in the trailer was made in the trial court and none should be considered here. However, from our review of the record, it is clear that whether or not the trailer occupied by Mark Mock was included within the search warrant is immaterial. Rule 11.1 of the Arkansas Rules of Criminal Procedure provides that an officer may conduct a search and make seizures without a search warrant if consent to that search is given. The record reflects that a state policeman went to the door of the trailer and spoke with Mitsi Mock, who identified herself as the wife of Mark. The officer stated that he advised her of her rights and told her that Mark had been arrested. He stated that he asked if she had any objections to a search of the trailer and that she stated she had none. He testified that Mitsi Mock escorted him to the bedroom and surrendered a bag containing a green vegetable substance that was on the bed and showed him several pieces of scientific glassware. The officer also found in the residence a large quantity of military hardware. The officer testified that, after the search, Mitsi Mock was again asked if her consent to the search was free and voluntary, and she responded in the affirmative.

■ Appellant Mark Mock argues that "there is no telling what [his wife] was told" and that she was "overwhelmed, intimidated, coerced, and tricked into giving her consent to search the home." We find no evidence contradicting the testimony of the officer that the consent was freely given. Mitsi Mock did not testify or attempt to give a different version of what occurred. Had she wished to do so, the proper procedure for the appellant to follow would be to elicit such evidence at a hearing on a timely motion to suppress the evidence. The proper manner of asserting a challenge to the legality of a search is at such a hearing, where the claims can be made without danger of self-incrimination, and one that fails to do so has no standing to make

that challenge at a later point. *Brown* v. *United States*, 411 U.S. 223 (1973); *Gass* v. *State, supra.*

Appellant Mark Mock further contends that the trial court erred in denying his motion for a directed verdict of acquittal on the charge of criminal possession of explosives. Ark. Stat. Ann. § 41-3108 (Repl. 1977) provides that a person commits the offense of criminal possession of explosives when he sells, possesses, or manufactures an explosive substance or incendiary device with the purpose of using that substance or device to commit an offense. The appellant argues that, even though the explosives were found in his residence, there was no evidence that he had any intent to use them to commit a criminal offense.

Intent or purpose to commit a crime is a state of mind which is not readily capable of proof by direct evidence and may be inferred from the surrounding circumstances. *Jackson* v. *State*, 290 Ark. 160, 717 S.W.2d 801 (1986). In this case, testimony was offered without objection that virtually all of the devices were military devices; that they had no commercial usage; that they had no legitimate home usage, nor are they even sold to the public; and that these items were known to have been used to booby-trap controlled-substance operations. When giving consideration to the nature of the appellants' operation, along with other weapons found at their residences and on their persons, we cannot conclude that the jury could not infer that these explosives were possessed for the purpose of aiding them in the commission of the offense of manufacturing controlled substances.

Appellants finally contend that the trial court erred in refusing to suppress the recorded telephone conversations between the informant and the appellants. They argue that the recordings were obtained in violation of Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510 *et seq.* (1982), because the informant had not willingly consented to their interception. Although the appellant moved to suppress the transcribed telephone recordings, it does not appear that the objection at the suppression hearing was made on this basis. Rather, this argument is presented for the first time on appeal. Although not required to do so, we have examined the record in this regard due to the seriousness of the offense for which the

parties were convicted. We find no merit in their argument that the informant did not give his consent to the recording of the conversations or that he was forced or coerced into consenting.

At the hearing, the informant testified that he was more or less "forced" to call the appellant, and that he made the calls against his wishes and with a "gun stuck to my head." It is understandable why a reluctant witness in a case of this nature might feel compelled to so testify. The Arkansas Supreme Court dealt with the issue of whether one of the parties to such a conversation voluntarily consented to its being recorded in *Schneider* v. *State*, 269 Ark. 245, 599 S.W.2d 730 (1980). The court there determined that, where the evidence is so conflicting as to whether the parties consented, the question resolves itself into one of credibility and resolutions of conflicts. In such instances, the appellate courts defer to the superior position of the trial judge. In the case now before us, Sergeant Dale Best of the Arkansas State Police testified that the informant agreed to place the telephone calls for the purpose of setting up a drug transaction with the appellants. The informant expressed his willingness and consent to do so. Sergeant Best further testified that the informant agreed that he would continue to make calls until such arrangements might be completed. The officer also stated that all of the recordings were made in the presence of the informant, who was fully aware that they were being made, and that it was not necessary to coerce him in any way to gain his cooperation. We cannot say that the trial court erred in its determination.

In the trial court, the appellants moved to suppress the taped conversations on the ground that they contained hearsay as to Leigh Ann Mock. It is to be noted first that all three appellants were charged with conspiracy to deliver a controlled substance. Rule 801(d)(2) of the Arkansas Rules of Evidence provides that a declaration is not hearsay if made by a co-conspirator of a party during the course and in furtherance of the conspiracy. The taped statements fall clearly within that exception. In all of them, Mark and Michael Mock, in coded messages, made arrangements to meet the informant for the purpose of delivering the substance. We further note that the informant testified to the content of those conversations in open court and nothing contained on the tapes was not mentioned in that testimony. Finally, these conversations had to do with the charges

of possession with intent to deliver and conspiracy. Leigh Ann Mock was acquitted of those charges and therefore suffered no prejudice as a result of the tapes being admitted. We find no error.

Affirmed.

JENNINGS and MAYFIELD, JJ., agree.