Derek Michael CHASE v. STATE of Arkansas

CR 97-739                                          973 S.W.2d 791

Supreme Court of Arkansas
Opinion delivered September 17, 1998

*Charles Duell*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Derek Michael Chase was found guilty of capital murder for the killing of his brother, Greg Dean Chase. Derek was sentenced to life imprisonment without the possibility of parole. He appeals his conviction, raising six points for reversal.

Derek first argues that the trial court erred in denying his motion for directed verdict. In particular, he submits that, under Arkansas law, a person must be shown to have caused the death of

another person, and the person must have had a premeditated and deliberate purpose when causing the death. *See* Ark. Code Ann. § 5-10-104(a)(4) (Repl. 1997). Derek points out that there was no eyewitness to how the struggle between him and his brother commenced, that only his testimony was given on this point at the trial, and that it showed that Greg had initiated the fight and Derek was defending himself against Greg's attack.

■ ■ We have consistently recognized that a criminal defendant's intent or state of mind is rarely capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Green v. State*, 330 Ark. 458, 956 S.W.2d 849 (1997). It is also settled law that premeditation and deliberation may be inferred from the type and character of the weapon used, the manner in which the weapon was used, the nature, extent, and location of the wounds inflicted, and the conduct of the accused. *Id.* In viewing the evidence in the light most favorable to the State, *Davis v. State*, 319 Ark. 460, 892 S.W.2d 472 (1995), we have no difficulty in reaching the conclusion that there was substantial evidence that, when stabbing and beating Greg, Derek did so with premeditation and deliberation.

The State's proof showed that Derek and Greg lived with their mother, Joy Tackel. Early in the morning of July 26, 1995, Joy awoke to the sound of Greg screaming. She arose and located Greg and Derek in the bathroom where she observed Greg on the floor and Derek standing over him with a plunger in his hand. Joy fled the home, and went to a nearby store, where she called the police and reported the incident. Joy and some of the store employees returned to the home, where they found Derek at the front door. He appeared to have just showered and washed his hair. Greg was still on the bathroom floor surrounded by blood, and a broken knife was found near his body. Greg was flown to a medical center and pronounced dead at 8:45 a.m. Police officers investigated the crime scene the same morning, and, among other things, found Derek's bloody cut-off shorts, a broken white-handle knife and a bread knife, a bloody shower curtain, and Derek's packed suitcase.

■    The medical examiner later determined and testified at trial that Greg had died from the stab wounds that had been inflicted by Derek, and that Greg had suffered twenty-one sharp-object wounds and fifty-eight blunt object blows to the body. Greg suffered deep wounds to his left chest area which included a two-inch tear in his heart. Greg also sustained defense wounds consistent with a person holding up his arms to ward off an attacker. In sum, the evidence showing the type, number, and distribution of the wounds was sufficient for a jury to conclude Derek was the aggressor and had acted with a premeditated and deliberated purpose.

For his second argument, Derek contends that since the death penalty was waived when he was charged with capital murder, he was precluded by law from having a bifurcated sentence hearing like that which is available when a person is charged with first-degree murder or other felonies. Derek asserts this failure to afford him a sentencing trial denied him equal protection under the law.

■    Citing *McGhee v. State*, 330 Ark. 38, 954 S.W.2d 206 (1997), the State counters that Derek failed to preserve this equal-protection argument below, and is barred from doing so now on appeal. We agree. At trial, Derek offered a general motion requesting that the court declare Arkansas's capital-murder statute unconstitutional because it overlaps with the state's first-degree murder statute. By making such a general motion, he failed to present the equal-protection argument he now enunciates on appeal, and we are unable to consider it for the first time on appeal. But *cf. Landreth v. State*, 331 Ark. 12, 960 S.W.2d 434 (1998); *Penn v. State*, 284 Ark. 234, 681 S.W.2d 307 (1984); *Miller v. State*, 273 Ark. 508, 621 S.W.2d 482 (1981) (where court considered and rejected similar equal-protection arguments related to Arkansas's capital and first-degree murder statutes).

We now consider Derek's third point for reversal. After he was arrested on July 26, 1995, Derek was taken to the police station where he was given his *Miranda* rights and interviewed. Derek urges that during the interview he said that he wanted to

talk to an attorney, but the officers failed to stop him from speaking further until after he made inculpatory statements. Relying on *Hughes v. State*, 289 Ark. 522, 712 S.W.2d 308 (1986), Derek argues that the trial court erred in refusing to exclude his fourteen-minute taped interview from being introduced into evidence.

To understand this issue, we set out the relevant portion of Derek's interview below:

> Q: Before we started, ah, the tape and everything we read you a statement of your rights. Is that right?
>
> A: Yes, you give me my rights.
>
> Q: Okay. And you understand your rights?
>
> A: Not totally. I don't understand them totally.
>
> Q: Okay. What do you mean by totally?
>
> A: But I'm willing to cooperate with you.
>
> Q: What part do you not understand? Do you want me to explain it to you again? Mike will . . .
>
> A: All I'm asking you for is just let me collect my thoughts and just let me talk to an attorney cause I've done admitted that me and Greg got in a scuffle, he is wanted by y'all for felonies and that he's been in prison. I have never been in prison. I was a correctional officer and I'm telling you the truth, I was, I have it in my wallet where my badge was. And I searched people most of the time and I went to school there at the Department of Corrections. I ain't the best person but I do love my sons. I need to talk to an attorney to tell him a few things and I'm gonna tell you the total truth. I was in and out of foster homes when I was a child, there's no consideration for that, I know. But I've worked hard all my life and I want to pay for my mistake. I have never hurt nobody before. This is the whole truth. I have to admit Greg had some problems and I do too. But I've done my best, I've worked and I've worked at lots of jobs, not just one job but a lot of jobs in my life. And this could be checked I'm sure. The best job I think I ever had was for

Beaver Lake Concrete. And my mother wasn't the best mother in the world either and I ain't been the best son neither. I've tried my best and I've stayed away from — I was married one time just for a little while to Mary Lee. I don't even remember what her middle name was, I was young, I've been in Rogers. I lived at Rogers. I worked at Garrett, Tyson's, and I worked at Down's Furniture and Roscal Price, he was a restaurant, this is when I was a child here. I've been here for years. I lived in Rogers there. Then I went in the service, I was a slush, I was a drunk. I do respect the law, but I do fear the law because I'll tell you, I have a lot of respect for some of the law men that's been here when I was a kid because they was decent people and they did what was right. And they are, y'all are decent people.

OFFICER RESPONSE: We try to be.

DEREK CONTINUES: And you know you are. I've done it. But it wasn't all my fault either. But I take the blame for it. I need to see, I'd like to see an attorney and I'd like to tell him the whole story before I say very much more. But I'm willing to go to prison for what I've done. But, you know, I've never hurt anybody before, you know, I mean, what you call hurt anybody. And y'all have, I've been scared before. You know what I'm saying? But if I don't stand up now, I ain't never gonna stand up. You know what I mean? You know, I love my son Michael, y'all know who he is. I love that child more than you would ever believe. Now my daddy was worthless and maw, I guess my mother, well, I can't say she was totally, because I was in foster homes a lot. You know? All of us was, all of my brothers and sisters, I have a lot of regrets, believe me, and it hurts. But at least let me talk to an attorney before I say very much if you would please. But I'm willing to spend my time in jail and take my punishment just like any one else. But I never, I want to say this, I never planned this. And me not ever hurting, I'd have never done it, I mean, I've admitted it to you. Haven't I.

OFFICER RESPONSE: Yeah.

DEREK CONTINUES: At least let me have a chance to talk to an attorney, please. For just a little while. If I have to spend, I don't care how long it is, I'll take my punishment. I'll take my punishment. Believe me, I'll take it. And I'll take all of it if I have to.

OFFICER CONCLUDES: That will end this interview, same date, the time is 3:34 P.M.

To decide this point on appeal, we must determine whether after Derek was informed of his rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966), and had invoked his right to counsel under *Edwards v. Arizona*, 451 U.S. 477 (1981), Derek waived his right. We conclude that he did.

■■ In *Edwards*, the Supreme Court held that an accused, having expressed his desire to deal with the police only through counsel, is not subject to further *interrogation* by the authorities until counsel has been made available to him, *unless* the accused himself initiates further communication, exchanges, or conversations with the police. (emphasis added). *See also*, LaFave and Israel, *Criminal Procedure*, § 6.9(g) (1992). The definition of interrogation can extend only to words or actions on the part of the police officers that they *should have known* were reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980). In *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), the Supreme Court stated that the admissibility of a confession given by a defendant who earlier invoked his *Miranda* right to counsel is to be determined by a two-step analysis. First, it must be asked whether the defendant "initiated" further conversation. If it is found the defendant "initiated" further conversation, it must then be inquired whether the defendant waived his right to counsel, that is whether the purported waiver is knowing and intelligent under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialog with the authorities. *Id.; see also Dillard v. State*, 275 Ark. 320, 629 S.W.2d 291 (1982).

■ In the present case, Derek was read his *Miranda* rights and he signed a rights form before officers commenced the taped interview. However, before the officers were able to question Derek about his knowledge about and participation in his brother's death, Derek indicated he did not totally understand his rights. When the officers attempted to clarify his rights, Derek, on his own initiative, interrupted and proceeded to relate a prolonged monologue during which the officers never asked a single question. In that monologue, he stated five times that he wanted to speak to an attorney, but throughout his speech, he also volunteered incriminating statements indicating he was involved in his brother's killing. In reviewing these circumstances, it can not be fairly concluded that Derek was subjected to police questions, words, or actions that would reasonably be likely or intended to elicit incriminating responses from Derek. Prior to Derek's monologue, all the officers had inquired of Derek was his address and directions thereto. In short, we hold that, under the totality of the circumstances, Derek — not the police — initiated and volunteered his incriminating statements to the authorities. Furthermore, Derek knowingly and intelligently waived his right to counsel as is prescribed under *Edwards*. Therefore, we uphold the trial court's decision overruling Derek's motion to suppress.

Derek's fourth argument challenges the trial court's ruling that admitted into evidence State exhibits numbers 51, 52, and 53. These exhibits are pictures that were taken of the victim at the hospital shortly after his death. Derek claims the pictures showed prejudicial blood and gore. He states that the autopsy photographs could have been used to show the same wounds on the victim without the blood and gore.

■ It is well settled that the admission and relevancy of photographs is a matter within the sound discretion of the trial court. *Carmargo v. State*, 327 Ark. 631, 940 S.W.2d 464 (1997). We have further held that even the most gruesome photographs may be admissible if they tend to shed light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of a case, are useful to enable a witness to testify more

effectively, or enable the jury to better understand testimony. *Id.* Here, the State used the three photographs to show the state of the body after the attack and the number of wounds, including one to the victim's back and another defense wound and slash cut to his wrist.

■ ■ As discussed earlier, the State was required to prove that Derek had the premeditated and deliberated purpose of causing Greg's death, and we have held the nature and extent of a victim's wounds is relevant to a showing of intent, which may be inferred from the type of weapon used, the manner of use, and the nature, extent, and location of the wounds. *See Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996). The State's three photographs presented strong probative evidence in proving the elements of the capital-murder crime with which Derek was charged and were particularly helpful to show the manner in which Derek used a knife when inflicting blows so violent that they opened Greg's chest cavity and caused substantial gashes to areas on his arms and wrist. We cannot say the trial court abused its discretion when allowing these exhibits into evidence.

Derek next argues the trial court erred in allowing the State to ask leading questions of its witness Joy Tackel, the mother of Derek and Greg. He generally concludes that, because of the leading questions, Tackel's testimony was furnished by the prosecution rather than herself and this prejudiced Derek's defense. Derek cites no legal authority to support his argument. We conclude Derek's argument is meritless.

During Tackel's direct examination by the State, Tackel was having trouble relating the events of what she saw and heard on the morning of Greg's murder. The court reporter interrupted, telling Tackel she could not understand her. The trial judge sympathetically told Tackel that he understood how difficult it must be for her, but instructed her to start again from an earlier point in her testimony and backtrack. The prosecutor then, in an effort to help Tackel, asked her to go slower so the court reporter could understand her. The prosecutor posed some leading questions such as, "You woke up and you heard screaming?" Derek's coun-

sel objected on the grounds of improper leading questions, but the trial judge overruled the objection, explaining that the judge would permit such questions during this particular period of Tackel's testimony. Eventually, Derek objected again, and at this point, the judge told the prosecutor, "Go back to your regular form [of questioning] at this point." The prosecutor did.

Under Rule 611(c) (1998) of the Arkansas Rules of Evidence, leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. In other words, the rule does not completely bar leading questions on direct, but gives the trial court discretion to permit leading questions to develop a witness's testimony. This court has held that such rulings on evidence by the trial court will not be reversed absent a manifest abuse of its discretion. *Davis v. State*, 319 Ark. 460, 892 S.W.2d 472 (1995). As provided in 611(a), the court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment. In this instance, the court allowed leading questions of Tackel in order to make her presentation effective, for if the court reporter and the judge could not hear her, the trial would not have been effective for the ascertainment of truth, and the jury may well have been confused or misled.

In his final argument on appeal, Derek alleges that the trial court erred in allowing improper impeachment by the State during the cross-examination of Derek. Derek states that the prosecution asked him about an unproven arrest which involved an alleged domestic battery in Wentsville, Missouri, against his family. He cites this question as improper under Arkansas Rule of Evidence 404(a), because the arrest was an unproven case against Derek and "it served only to 'dirty' him in front of the jury. . . ." Derek insists that the inference was so prejudicial to his case that his conviction should be reversed and the case remanded for a new trial. The State, however, maintains that Derek did not object to

this question at trial, and thus, his argument is not preserved for appellate review.

Our review of the abstract does not reveal any objection by Derek to this line of questioning by the State. At no point did Derek's counsel interrupt the prosecutor to make any type of remark regarding the questioning about Derek's arrest in Missouri for assault in the third degree. The court will not address arguments raised for the first time. *See Moore v. State*, 321 Ark. 249, 903 S.W.2d 154 (1995).

Pursuant to Ark. Sup. Ct. R. 4-3(h), the record has been reviewed in its entirety and no other rulings adverse to Derek involving prejudicial error have been found.

Affirmed.