Marvin L. THORNTON *v.* STATE of Arkansas

CA CR 03-374                                                 144 S.W.3d 766

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered February 4, 2004

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

TERRY CRABTREE, Judge. Pursuant to Ark. R. Crim. P. 24.3, the appellant, Marvin L. Thornton, entered a conditional guilty plea to possessing marijuana with intent to deliver. The Jefferson County Circuit Court sentenced him to three years' probation and fined him $750. On appeal, appellant maintains that the trial court erred in denying his motion to suppress. We affirm.

Appellant argues that he was seized during a traffic stop and that he did not voluntarily consent to a search of his shoes, which yielded marijuana. Specifically, appellant contends that the officer's request that he remove his shoes was a custodial interrogation, which triggered his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). In reviewing suppression issues, appellate courts

"conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court." *Davis v. State*, 351 Ark. 406, 413, 94 S.W.3d 892, 896 (2003).

The trial court held a suppression hearing, and four witnesses testified, including appellant. The testimony demonstrated that appellant's brother, Jeff Smith, drove a silver Cadillac with appellant and his cousin riding as passengers to a convenience store in Pine Bluff, Arkansas, where they stopped for gas. Two of them separately entered the store, walked around, and left without buying anything. These actions aroused the suspicions of Jefferson County Sheriff's Deputy Mike Powers, who was in the store visiting with the clerk. Powers decided to check the tags on the Cadillac. However, as he stepped outside, the car backed up across the parking lot in an apparent effort to obscure the license plate. Powers maneuvered his car to make the occupants of the Cadillac think he was leaving. When the Cadillac pulled out, he radioed in the license plate number. The license plate was registered to a blue GMC truck. Recognizing that the Cadillac displayed fictitious tags, Powers called for a backup patrol unit and followed the vehicle into traffic.

As the Cadillac reached the outskirts of town, it made a sudden left turn into the parking lot of another convenience store. Powers characterized this move as evasive, and he doubled back and waited nearby. The Cadillac began to pull out of the parking lot, then backed up suddenly as though its occupants had seen Deputy Powers' car. Powers pulled into the parking lot, notified his dispatcher that he had no choice but to proceed without backup, and approached the occupants of the car. Immediately prior to his approach, Smith attempted to exit the Cadillac, and appellant's cousin exited the car and walked around the back corner of the store. Powers ordered both men back into the car. Powers asked Smith for driver identification. Smith handed him a fictitious high-school identification card. While Powers was speaking with the car's occupants, Sergeant Calvin Terry, a canine officer, arrived with his dog.

In the meantime, a customer of the store approached Powers and reported that, when Powers had driven by the store, one of the passengers in the Cadillac exited the car and hid a plastic bag in the receptacle that contained window-washing fluid. The customer

stated that, when it appeared that Powers had left, the same occupant retrieved the bag and returned to the car. Based upon this information and the previous actions of the Cadillac's occupants, Powers suspected that the occupants were engaged in narcotics activity.

After Terry arrived, Powers ordered the occupants out of the car. Powers conducted a safety frisk of them. Appellant informed Powers that he had a pocket knife. Powers discovered no other weapons. Because it was raining, the officers eventually moved the occupants to the front of the store, in front of the vehicle, underneath an overhang. Captain Greg Bolin also responded to the incident, but he did not get out of his vehicle. Terry's car was parked behind Powers' car, and Bolin's car was parked briefly behind Terry's car. An off-duty officer, Jody O'Mary, heard the dispatcher's report and stopped at the scene. O'Mary was in his personal vehicle, and he parked it away from the other police vehicles. O'Mary stood near the occupants when the car was searched.

Sergeant Terry retrieved his dog from the patrol car and ran it around the Cadillac. The dog positively indicated on the car, and a physical search revealed pieces of marijuana and residue on the carpet and throughout the interior of the car. Powers testified that in his experience, narcotics offenders often hide drugs in their shoes. Terry testified that he asked whether any of the passengers had any drugs on them, and all of them, including appellant, said that they did not. Terry also stated that he noticed that only appellant's shoes were untied. Terry further stated that he asked if the occupants minded removing their shoes, and all agreed to do so. According to Terry, appellant kicked off his shoes, and the officers recovered a plastic bag from inside one of the shoes that held individually wrapped bags of marijuana.

Upon discovery of the contraband, the officers arrested appellant for possession of marijuana with intent to deliver. Later that day, appellant admitted to the police that the marijuana found in his shoe did not belong to his brother or cousin. In his pretrial motion to suppress, appellant argued that his statement and the seized marijuana should be excluded as evidence. The trial court denied the motion. On appeal, appellant maintains that when Sergeant Terry asked him to remove his shoes, appellant was subjected to a custodial environment such that *Miranda* warnings were required. We disagree.

In his oral findings, the trial judge stated:

> First of all I think that the officers had more than — they had good reason to stop this vehicle. Once they stopped this vehicle, events transpired that, that caused them to develop probable cause to go further than, than what they probably, initially thought they were going to do. I do not believe that the, the circumstances out there, the surroundings out there amounted to an in-custody interrogation[.]

The State contends that the trial court found that appellant consented to the search. We need not decide that issue because we hold that the police had probable cause to arrest appellant for possession of marijuana and that the search of his shoes was incident to his arrest.

When Deputy Powers ran the tags on the Cadillac, he learned that it was registered to a blue GMC truck. At that point, Powers had probable cause to stop the car because he had reason to believe that he had witnessed a violation of the law in his presence. *See Medlock v. State*, 79 Ark. App. 447, 89 S.W.3d 357 (2002) (holding that officer had probable cause to arrest driver of car for having a fictitious license plate in violation of Ark. Code Ann. § 27-14-306(a) (Repl. 1994)). Our state supreme court has explained:

> Having made a valid traffic stop, the police officer may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning. During this process the officer may ask the motorist routine questions such as his destination, the purpose of the trip, or whether the officer may search the vehicle, and he may act on whatever information is volunteered.

*Laime v. State*, 347 Ark. 142, 157-58, 60 S.W.3d 464, 474-75 (2001), *cert. denied* 535 U.S. 1055 (2002).

Following a valid traffic stop, the officers engaged in the sort of routine tasks permitted by *Laime, supra*. Sergeant Terry testified that he was present at the convenience store with his drug dog and that the dog sniffed the car. The dog's positive indication gave the officers additional cause to search the Cadillac, *see Willoughby v. State*, 76 Ark. App. 329, 332, 65 S.W.3d 453, 456 (2002), and, once evidence of narcotics activity was found inside the car, the officers were justified to investigate further.

■■ An officer may arrest a person without a warrant if he has reasonable cause to believe that the person has committed a felony or any violation of law in the officer's presence. Ark. R. Crim. P. 4.1. Reasonable cause exists where facts and circumstances, within the arresting officer's knowledge and of which he has reasonably trustworthy information, are sufficient within themselves to warrant a man of reasonable caution to believe that an offense has been committed by the person to be arrested. *Gass v. State*, 17 Ark. App. 176, 706 S.W.2d 397 (1986). Most courts agree there is no substantive distinction between the terms "reasonable cause" and "probable cause." *Johnson v. State*, 21 Ark. App. 211, 730 S.W.2d 517 (1987). Where an officer has the probable cause to arrest pursuant to Rule 4.1, he may validly conduct a search incident to arrest of either the person or the area within his immediate control. *Earl v. State*, 333 Ark. 489, 970 S.W.2d 789 (1998).

■ Here, Officer Powers made several observations that amounted to probable cause to arrest appellant: (1) the passengers' suspicious actions upon entering the convenience store; (2) the Cadillac's evasive maneuvering after coming into contact with Officer Powers; (3) the vehicle's display of fictitious tags; (4) Smith's production of a fictitious identification card; (5) the customer's report that an occupant of the Cadillac hid a plastic bag in the cleaning receptacle; (6) the canine's positive alert on the exterior of the Cadillac; (7) the officer's discovery of pieces of marijuana and residue throughout the interior of the vehicle upon a physical search; and (8) the appellant's untied shoes. Because Powers had probable cause to arrest appellant after the canine discovered narcotic residue inside the car, Powers could lawfully conduct a search incident to an arrest, and he did. *See Earl, supra.*

■■ A search is valid as incident to a lawful arrest even if conducted before the actual arrest provided the arrest and search are substantially contemporaneous and there was probable cause to arrest prior to the search. *Rawlings v. Kentucky*, 448 U.S. 98 (1980); *Brunson v. State*, 327 Ark. 576-A, 940 S.W.2d 440 (1997). Based upon his observations, Officer Powers clearly had probable cause to place appellant under arrest prior to the search. Furthermore, appellant's formal arrest followed quickly on the heels of the

challenged search of appellant's person, *see Rawlings*, 448 U.S. at 111, and as soon as the officer found the contraband in appellant's shoe.

■ Judged by these standards and based on the evidence of record, we conclude that probable cause to arrest the appellant existed prior to the challenged search, that the search and subsequent arrest were "substantially contemporaneous," and that the trial court did not err in refusing to suppress the evidence.

In reaching our holding, we reject the dissent's mischaracterization of this case as falling within the purview of the Fifth Amendment. The dissent cites no authority for the proposition that a person in appellant's position must be issued *Miranda* warnings during a search incident to a lawful arrest. In fact, the dissent avoids addressing this issue altogether. This case fits squarely within the parameters of the Fourth Amendment's analysis regarding unreasonable searches and seizures. Here, the search was not unreasonable because an exception to the rule applies, namely, a search incident to a lawful arrest.

STROUD, C.J., GLADWIN, and NEAL, JJ., agree.

BAKER, J., concurs.

GRIFFEN, J., dissents.

KAREN R. BAKER, Judge, concurring. I agree with the majority that this case should be affirmed. I write separately because unlike the majority I see no need to address whether appellant was seized during the traffic stop or whether he voluntarily consented to a search of his shoes.

I would not address those issues because appellant does not raise those arguments on appeal. Instead, appellant argues only that the officer's request or directive that he remove his shoes was a custodial interrogation triggering his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Thus, the only question we need answer is whether there was a custodial interrogation.

I conclude that the answer to that question is no. I reach this conclusion, not by focusing on whether or not appellant was in custody, but on whether or not appellant was being interrogated rather than searched when he was asked to remove his shoes. We have held that a search occurs whenever something not previously in plain view becomes exposed to an investigating officer. *McDonald v. State*, 354

Ark. 216, 119 S.W.3d 41 (2003); *Norris v. State*, 338 Ark. 397, 993 S.W.2d 918 (1999) (citing *Arizona v. Hicks*, 480 U.S. 321 (1987)). The definition of interrogation can extend only to words or actions on the part of the police officers that they should have known were reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291 (1980); *Chase v. State*, 334 Ark. 274, 973 S.W.2d 791 (1998). The officer's direction for appellant to remove his shoes was intended to expose the contraband, placing it in plain view, to the officer. Therefore, I believe it is clear that at that point he was being searched rather than questioned.

WENDELL L. GRIFFEN, Judge, dissenting. I would reverse the denial of appellant's motion to suppress because appellant was subjected to custodial interrogation without being informed of his *Miranda* rights. This constituted a clear violation of his right to be free from self incrimination guaranteed by the Fifth Amendment to the federal Constitution. The majority would affirm on the ground that the search was incident to a lawful arrest because the officers had probable cause to arrest appellant. The majority does not address the issue of whether appellant was entitled to *Miranda* warnings and indeed, would be hard-pressed to argue that he was not entitled to such warnings.

Our law is clear that a person is entitled to *Miranda* warnings when he is deprived of freedom of action by formal arrest or restraint on freedom of movement to the degree associated with a formal arrest. A suspect is entitled to *Miranda* warnings when he is interrogated while in custody or when his freedom of action is curtailed to a degree associated with formal arrest. *See Berkemer v. McCarty*, 468 U.S. 420 (1984). Here, appellant was subject to custodial interrogation without benefit of *Miranda* warnings; yet, neither the trial court nor the majority determined that appellant waived his *Miranda* rights. The fact that the officers may have had probable cause to arrest appellant does not mean that they were authorized to arrest him without issuing *Miranda* warnings.

In denying appellant's motion to suppress, the trial judge stated that once the vehicle was stopped, events transpired that gave the officers "probable cause to go further than they initially thought." The judge further stated that the circumstances did not constitute an in-custody interrogation, noting that the subjects were still at liberty and that they were not under arrest, were not in an interrogation room at the police station, and were not in the back seat of a police car.

These statements are inaccurate statements of the law and are doubly erroneous. First, they suggest that simply because someone is in a police station or a police car, that he is automatically subject to custodial interrogation if he is being questioned. This is incorrect. *See Manatt v. State*, 311 Ark. 17, 842 S.W.2d 845 (1992) (holding that where officer issued offender a citation in lieu of arrest after a routine traffic stop, the accused was not "in custody" for purposes of *Miranda* warnings); *Day v. State*, 306 Ark. 520, 816 S.W.2d 852 (1991) (holding statements made at a police station were not the result of custodial interrogation); *Berkemer v. McCarty, supra* (holding that keeping an individual inside of a police car, after a routine traffic stop, does not constitute custodial interrogation for *Miranda* purposes). Second, the statements suggest that *unless* someone is in a police station or a police car, he is free to leave. This is also untrue. *See, e.g., Keenom v. State*, 349 Ark. 381, 80 S.W.3d 743 (2002) (holding a reasonable person would have not felt free to leave his yard and return to his home where the officers continued to question the defendant, who was partially clothed, under the glare of the officers' headlights).

Rather, the law is clear that a seizure occurs when a reasonable person would not feel free to leave. *Keenom v. State, supra.* A suspect who has not been formally arrested is entitled to *Miranda* warnings when he is interrogated while in custody or when his freedom of action is curtailed to a degree associated with formal arrest. *See Berkemer v. McCarty, supra.* The applicability of *Miranda* to traffic stops was discussed by our supreme court in *Manatt v. State, supra.* The *Manatt* court held:

> In *Berkemer v. McCarthy, supra*, the United States Supreme Court held that persons temporarily detained pursuant to a routine traffic stop are not "in custody" for purposes of *Miranda*. The Court reasoned that *Miranda* warnings were not required in such cases because the stop was temporary, it was public, and the atmosphere on a public street is not comparable to the "police dominated" custodial interrogation. The Court held that a motorist who is detained pursuant to a traffic stop is entitled to recitation of his rights only when the stop becomes such that he is "subjected to treatment that renders him 'in custody' for practical purposes."

*Mannatt*, 311 Ark. at 26, 842 S.W.2d at 849. Thus, a person who is questioned during a routine traffic stop is not subjected to custodial

interrogation. *Conway v. State*, 62 Ark. App. 125, 969 S.W.2d 669 (1998). Further, *Miranda* warnings are not required if the questioning by police is simply investigatory. *Shelton v. State*, 287 Ark. 322, 699 S.W.2d 728 (1985).

In this case, the facts demonstrate appellant was subject to custodial interrogation. Three uniformed officers were present. A fourth officer stood near the subjects in case anyone tried to escape. In addition, three police cars were parked behind Smith's car and had it blocked. *Compare Bohannon v. State,* 72 Ark. App. 422, 38 S.W.3d 902 (2001) (holding the defendant was not in custody where an officer blocked the defendant in by parking behind him, but the defendant was blocked in only because he decided to park in front of a locked gate). Also on the scene was a 110-115 pound bite-and-hold dog. The subjects originally stood at the back of the car, then after about fifteen minutes, were moved to a wall by the front of the store. They were searched for weapons two times by two different officers, in addition to the search that resulted in the seizure of marijuana. No reasonable person in appellant's position would have felt free to leave after the encounter plainly went beyond a routine traffic stop.

In addition, after the canine search was concluded and evidence of drugs was found, the questioning was no longer "simply investigatory" because at that point, the officer had probable cause to believe a crime had been committed and, moreover, had probable cause to believe that appellant, as an occupant of the vehicle in which the evidence of drugs was found, had committed that crime. *See Maryland v. Pringle*, 540 U.S. 366 (December 15, 2003). Terry testified that, from his experience, if a drug dog gives a positive alert, and drugs are not found in the vehicle, they are usually on the person of an occupant of the car, and that shoes are a common hiding place. After the dog alerted in this case, the officers were no longer asking routine questions or performing routine tasks related to a stop for the display of fictitious tags. The officers were not simply trying to ascertain whether a crime had been committed, but which of the three occupants had possession of the marijuana that the drug dog had detected. Only after another pat-down revealed no drugs were the men asked or ordered to remove their shoes. It is farcical to suggest that a person would reasonably believe that he was free to leave after an officer found evidence of narcotics in a vehicle in which that person was a passenger when precisely those same facts gave the officer probable cause to arrest.

In asserting that the police officers had probable cause to arrest appellant, the majority relies upon *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001). The *Laime* court discussed the detention associated with a valid traffic stop as follows:

> [H]aving made a valid traffic stop, the police officer may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning. *See United States v. Carrazco*, 91 F.3d 65, 66 (8th Cir. 1996). During this process, the officer may ask the motorist routine questions such as his destination, the purpose of the trip, or whether the officer may search the vehicle, and he may act on whatever information is volunteered.

347 Ark. at 157-58, 60 S.W.3d at 474-75 (*quoting United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999)).

However, in relying on *Laime, supra*, the majority confuses the issue of whether the officers had probable cause to conduct a warrantless search with a defendant's rights to have *Miranda* warnings issued. *Laime, supra*, did not involve an officer's failure to issue *Miranda* warnings. Moreover, *Laime* does not stand for the proposition that allowing an officer to act on information received during a routine traffic stop means that the officer's conduct thereafter never rises to the level of a custodial interrogation. Further, *Laime* does not relieve an officer of his duty to inform a suspect of his *Miranda* rights when the routine traffic stop becomes a custodial investigation. The stop in this case began as a routine traffic stop; after the canine sniff was conducted and yielded evidence of narcotics, the traffic stop bloomed into a custodial interrogation.

Finally, the State asserts that the trial court found that appellant consented to the search by removing his shoes. The record does not support that the court found that appellant consented; rather, the court found that the officers had probable cause to conduct the search. Unsurprisingly, the majority does not address the issue of consent, which would be relevant to a determination of whether appellant waived the right to receive his *Miranda* warnings.

The record does not support the premise that appellant consented to the search. Even if Officer Terry merely requested that appellant remove his shoes instead of ordering him to do so,

that activity was not voluntary but constituted interrogation. "Interrogation" includes express questioning or its functional equivalent, including words or actions on the part of a police officer, other than those normally attendant to arrest and custody, that the officer should know are reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis*, 446 U.S. 291 (1980). The crucial point is that, regardless of whether Terry asked or ordered appellant to remove his shoes, Terry did so knowing that his words and actions were likely to elicit an incriminating response. Appellant did not consent to be searched by spontaneously removing his shoes; he removed his shoes only at the officer's request or direction. The fact that the officer had probable cause to effect a search did not nullify appellant's right to be free from self-incrimination under the Fifth Amendment.

I respectfully dissent.