Jeffery Hugh FRENSLEY *v.* STATE of Arkansas

CR 86-182                                            724 S.W.2d 165

Supreme Court of Arkansas
Opinion delivered February 23, 1987

*John W. Settle*, for appellant.

*Steve Clark,* Att'y Gen., by: *Lee Taylor Franke*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. A jury found appellant guilty of one count of aggravated robbery and five counts of kidnapping. He appeals from the judgments of conviction. We affirm.

Appellant's first two points of appeal are that the trial court erred in refusing to suppress the identification of appellant because (a) the pre-trial lineups were suggestive, and (b) the photo spread was unduly suggestive. The trial judge examined the out-of-court identification procedures to see if there were suggestive elements to either the lineup or the photo spread which made it all but inevitable that the victims would identify appellant as the perpetrator of the crimes. This preliminary ruling was a ruling on a mixed question of law and fact, and we do not reverse the ruling unless it is clearly erroneous. *Cook* v. *State*, 283 Ark. 246, 675 S.W.2d 366 (1984). Factors to be considered in lineup identification cases are set out in both federal and state law. *See Manson* v. *Brathwaite*, 432 U.S. 98 (1977); *Cook* v. *State*, 283 Ark. 246, 675 S.W.2d 366 (1984). These factors include the opportunity of the victim to observe the crime and its perpetrators; the lapse of time between the crime and the lineup; discrepancies between descriptions given the police and the defendant's true physical characteristics; the occurrence of pre-trial misidentification; the certainty of the witnesses in identifying the accused; and the totality of the facts and circumstances regarding the identification.

In this case the opportunity to observe the criminal was great. Some of the victims observed him at close range for more than an hour in a well lit room. Four of them viewed the lineup within five weeks and made positive identification. The fifth victim viewed the photographic spread five months after the

commission of the crimes and made a positive identification. The descriptions by all five of the victims may be fairly said to be reasonably accurate, although they do vary. These descriptions were given immediately after the robbery. There was no misidentification and the victims were certain that appellant was the culprit. Finally, the totality of the circumstances shows that the lineup was not unduly suggestive.

Appellant contends that the lineup was tainted because the five victims discussed among themselves the description of the perpetrator, that they knew a suspect was in custody when they made their identifications, that there were discrepancies in the descriptions, and that one of the five victims knew that another victim had already identified someone. These credibility factors, when considered in the totality of the circumstances, are not sufficient to make the trial court's ruling clearly erroneous. As we have frequently said, it is for the trial court to weigh the evidence and resolve the credibility of the witnesses. *Girdner* v. *State*, 285 Ark. 70, 684 S.W.2d 808 (1985).

The photographic spread contained five pictures. Each was of a white male with a mustache and beard, each one fitting the general physical description and age of appellant. None of the photographs suggested appellant as the criminal, and none of the testimony at the pre-trial hearing suggested that the police attempted to influence the victim's identification.

Appellant's next assignment of error concerns the trial court's requiring his presence at the in-court identification hearing. Obviously, he did not want to be identified. His attorney waived any constitutional objections which might arise because of his proposed absence. The trial court declined the motion and ordered the appellant to be present so that he could be observed. The ruling was correct. While we are unable to find an Arkansas case precisely in point, the issue is not new or novel in other jurisdictions. In fact, it is the subject of an A.L.R. Annotation. *See* Annot., 171 A.L.R. 1144 (1974), and see in particular, §§ II.a.3. and II.b.2. The annotation cites numerous federal and state authorities holding that a defendant in a felony case has the duty of attending his own trial by being personally present in the courtroom within view of the judge and jury. Among the cases cited is *People* v. *Gardner*, 144 N.Y. 119, 38 N.E. 1003 (1894), in

which the court wrote: "it is the right of the prisoner to be in the presence and view of the jury, and it is the right of the prosecution to have him in the view of the presiding judge and jury and the counsel engaged in the trial." No contra holdings are listed.

The annotation provides:

It would seem that requiring a defendant in a criminal case to attend his own trial and be present in the courtroom, within view of the court and jury, and of witnesses testifying in the case, could not in any sense be considered violative of the defendant's constitutional privileges. Note this relevant comment by Professor Wigmore: "If an accused person were to refuse to be removed from the jail to the courtroom for trial, claiming that he was privileged not to expose his features to the witnesses for identification, it is not difficult to conceive the judicial reception which would be given to such a claim. And yet no less a claim is the logical consequence of the argument that has been frequently offered and occasionally sanctioned in applying the privilege to proof of the bodily features of the accused." 8 Wigmore, Evidence 3d ed. p. 374, § 2265.

Accordingly, the trial court did not commit error in requiring the appellant to be present for in-court identification.

The appellant next contends that the trial court erred in admitting into evidence the testimony about his arrest and the items which were seized at the time of the his arrest. Again, the trial court was correct in its ruling because the evidence showed a plan of criminal operation, or *modus operandi*. It had independent relevance. *See Alford v. State*, 223 Ark. 330, 266 S.W.2d 804 (1954).

The evidence showed that appellant was a former employee of one of the Long John Silver's restaurants in Tennessee. In the case at bar, he committed the robbery and kidnappings by entering the Long John Silver's restaurant in Fort Smith at about 10:00 p.m. He sat in a particular seat, labeled the "hot seat" by the employees, because it was where would-be robbers always sat. He ordered a meal but did not eat it. He went into the restroom for about thirty minutes, came back to the "hot seat," pulled a dark .38 caliber revolver, and announced he was there to commit a

robbery. By this time he had on brown jersey work gloves. He pulled some tape from his pocket, with the tape bound the hands of four of the employees behind their backs, and made them lie on the floor. He then forced the fifth employee to give him the money, bound him with tape, made him lie on top of the other four employees and left them all bound and on the floor. After finally getting loose, all of the victims immediately made written notes describing the robber's physical appearance. In the following week three of the victims worked with a police artist to compile a composite sketch of the robber. Jerrico, Incorporated, the parent company of Long John Silver's, included the sketch on a flyer which was sent to all Long John Silver's restaurants. The flyer included the following information:

> The police sketch below is of a suspect wanted in connection with the armed robbery of Long John Silvers #5141 in Little Rock, Arkansas. The suspect is described as being a white male, 28 to 30 years old, 5'8" to 5'10" tall and weighing 190 to 200 pounds. He has dark curly hair covering his ears with a full beard and mustache. He could be wearing or carrying a jacket and could have brown cotton work gloves. The suspect has been known to enter the unit the last hour of business, order a meal and wait until closing to rob the employees. The suspect brings his own grey duct tape to tie up the victims and displays a small dark revolver. The suspect is wanted in connection with other robberies in the east Texas, Arkansas and Oklahoma area. If this person is observed please call the local police and advise them that a possible robbery suspect is in the building and notify the Jerrico Corporate Security Dept. at 1-800-354-9058 24 hours a day.

About a month later a man matching the above description walked into the Long John Silver's restaurant in Muskogee, Oklahoma just before closing time, sat in the "hot seat," ordered a meal, and then went into the restroom. The employees recognized appellant from the sketch on the flyer and realized they were about to be robbed. One of the employees called the police. While the police were responding and while appellant was still in the bathroom, one of the employees looked in appellant's jacket, which was in the "hot seat," and found a dark revolver, brown jersey work gloves, and a roll of tape. The police arrived shortly

and arrested appellant. They seized the jacket, tape, gun, gloves, and a knife with tape residue on the blade. These items were admitted into evidence.

The evidence is independently relevant to show the appellant's method of operation. There are two requirements for introducing such evidence: (1) both acts must be committed with the same or strikingly similar methodology; and (2) the methodology must be so unique that both acts can be attributed to one individual. Imwinkelreid, *Uncharged Misconduct Evidence*, § 3.10 to 3.12 (1984). The methodologies in the instant case resemble each other so much that it is reasonable to deduce that the same person who was arrested in Muskogee committed the robbery in Fort Smith. Further, the methodology uniquely sets apart and identifies appellant as the robber. The similarities include the robbery of Long John Silver's restaurants, the time of entry, the place of seating, the long stay in the restroom, the knowledge of the layout of the restaurants, the use of a dark colored revolver, the use of tape, the wearing of brown jersey work gloves, and the physical appearance of the robber. Both actions were committed in the same unique fashion. Further, the two acts were so unique and uncommon that they became distinctive and identifying. The two acts establish a method of operation. The inference is clear, there were not two different robbers. The evidence was properly admitted.

The next point of appeal may be dispensed with quickly. Appellant contends that the trial court erred in refusing to grant a mistrial after a policeman violated an in limine ruling by truthfully answering a question by appellant's counsel during cross-examination. The argument is without merit because (1) when the appellant injects a matter into a case by questions on cross-examination, he cannot complain about what develops, *Stovall* v. *State*, 233 Ark. 597, 346 S.W.2d 212 (1961), and (2) the granting of a motion in limine to prevent certain testimony does not require a witness to conceal the truth in order to answer a question propounded by the party who moved for the threshold order. *Robinson* v. *State*, 275 Ark. 473, 631 S.W.2d 294 (1982).

Finally, appellant contends that the kidnapping offenses were lesser included offenses of the aggravated robbery charge. Ark. Stat. Ann. § 41-105 (Repl. 1977). The argument is

without merit. Where the restraint exceeds that which necessarily accompanies the crime of aggravated robbery, the robber is also subject to prosecution for kidnapping. *See* Ark. Stat. Ann. § 41-1702 and paragraph three of the comment; *see also Beed* v. *State*, 271 Ark. 526, 609 S.W.2d 898 (1980). Here, the restraint was greater than normally incidental to aggravated robbery, so the appellant was subject to prosecution for kidnapping.

Affirmed.