Millard James RUSSEY *v.* STATE of Arkansas

CR 98-383                                          985 S.W.2d 316

Supreme Court of Arkansas
Opinion delivered February 18, 1999

*Alvin Schay*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Mac Golden*, Ass't Att'y Gen., for appellee.

T OM GLAZE, Justice. Appellant Millard James Russey was charged as a habitual offender with the rape of a female victim who was fifteen years old at the time of the crime. A jury

found Russey guilty and sentenced him to life imprisonment. On appeal, Russey raises two points for reversal, but neither point has merit.

Russey first argues the trial court erred in failing to grant his motion to suppress a blood sample taken from him soon after the police picked up Russey as the rape suspect. He points out that the State had the burden to show he had freely and voluntarily consented to the drawing of his blood and no actual or implied duress or coercion was exercised by the officers.

The law is settled that the taking of blood by a law enforcement officer does amount to a Fourth Amendment search and seizure, but a consensual search does not run afoul of the amendment. *Mills v. State*, 322 Ark. 647, 660, 910 S.W.2d 682, 689 (1995). We also have said that a consensual taking of blood does not require a court order when the drawing is voluntary. *Id.*; *cf.* Ark. R. Crim. P. 18.1(a)(vii). Here, then, the question is whether Russey voluntarily agreed to the taking of his blood. In resolving this issue, this court reviews the evidence in the light most favorable to the State and considers the totality of the circumstances in determining whether the State proved that consent to search was freely and voluntarily given without actual or implied duress or coercion. *Mills*, 322 Ark. at 660, 910 S.W.2d at 689; *Scroggins v. State*, 268 Ark. 261, 263, 595 S.W.2d 219, 220 (1980). We will affirm a finding of voluntariness unless that finding is clearly against the preponderance of the evidence. *Id.*

Russey claims that any consent that he gave to draw blood resulted from Gurdon City Marshall David Childres's threat to take action against Russey on some "hot checks" he was previously alleged to have "forged" at the local Jiffy Mart. Russey said that Childres was armed with a gun when he picked up Russey as a rape suspect and took him to the Gurdon police station, where he met Wes Sossamon, a criminal investigator with the Clark County Sheriff's Office. Russey claims Sossamon immediately transported him to an Arkadelphia hospital where his blood was drawn. He further asserts he did not sign any consent form for any blood samples until after Sossamon returned him to the police station. Russey emphasized that Officer Childres had been

actively involved in working with Russey regarding the "hot check" problems and would give Russey a receipt for payments he made to pay off his bad checks. Russey testified that he only cooperated and consented to giving a blood sample because Childres had told him there was a new hot check and that Childers would turn the checks over to the prosecutor if he did not cooperate with Sossamon. He added, "I lied when I said on the tape[1] that I voluntarily consented to the blood sample because Mr. Childres was standing in the door and had threatened me with this here and held this over my head and I did not want to go to jail."

Officers Childres and Sossamon largely denied Russey's version of what led to his signing the consent form to allow his blood to be drawn. Childres said that he did assist Russey in making his payments to pay off the Jiffy Mart checks, but related Russey had paid all but twenty dollars owed on them. Childres argued that, with Russey's permission, he took Russey to the police station where Officer Sossamon, alone, interviewed him. Childres testified that he could not say what Sossamon and Russey "talked about." Childres denied having told Russey that Childres would turn Russey's checks over to the prosecutor if Russey did not cooperate with Sossamon.

Sossamon testified that when he interviewed Russey, he told Russey that he was free to go and was not required to cooperate with the investigation. He said that, at the time of the interview, he was aware of Russey's bad checks. After telling Russey that he was a suspect, Sossamon said that Russey signed a consent form waiving his rights and authorizing his blood to be drawn. Sossamon related that Russey had a lengthy criminal record and was well acquainted with his legal rights in these circumstances. Sossamon also contradicted Russey's version of when the blood was drawn, stating that Russey's blood was drawn at the hospital after he had signed the consent form. Sossoman further related that Russey signed a Miranda waiver after the blood was drawn.

---

[1] Childres made an audiotape during questioning on which Russey answered that he voluntarily gave a sample of his blood.

■ Faced with the different versions of what led to when and why Russey consented to his giving a blood sample to Officer Sossamon, the trial court was not required to believe Russey's version of events. *Wright v. State*, 335 Ark. 395, 404, 983 S.W.2d 397 (1998). The credibility of the witnesses in this instance was for the trial court to weigh and assess. *Mills*, 322 Ark. at 661, 910 S.W.2d at 689, and in doing so here, the trial court obviously resolved the conflicts in testimony against Russey's explanation of what had occurred, holding his consent had been given voluntarily and without duress or coercion. We cannot say the trial court was clearly erroneous.

■ ■ In his second point for reversal, Russey argues the trial court erred in failing to grant his motions for directed verdict. As we have often stated, motions for directed verdict are treated as challenges to the sufficiency of the evidence. *Marta v. State*, 336 Ark. 67, 983 S.W.2d 924 (1999). When reviewing the sufficiency of the evidence on appeal, this court does not weigh the evidence, but simply determines whether the evidence in support of the verdict is substantial, which is defined as direct or circumstantial evidence that is forceful enough to compel a conclusion and which goes beyond mere speculation or conjecture. *Id.* In determining whether there is substantial evidence, this court reviews the evidence in the light most favorable to the State. *Id.*

■ In this case, Russey was charged with engaging in sexual intercourse with a female by forcible compulsion in violation of Ark. Code Ann. § 5-14-103 (Repl. 1993). Sexual intercourse is defined as the "penetration, however slight, of the labia by a penis," Ark. Code Ann. § 5-14-101(9) (Supp. 1995), and forcible compulsion is defined as "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." Ark. Code Ann. § 5-14-101(2) (Supp. 1995). This court has also held repeatedly that the uncorroborated testimony of a rape victim is sufficient to sustain a conviction. *Freeman v. State*, 331 Ark. 130, 959 S.W.2d 400 (1998).

■ At trial, the rape victim identified Russey as the man who attacked and forced her to have sexual intercourse while holding a knife to her throat. The State presented evidence that,

after the victim reported that she had been raped, a physical exam was conducted and the medical findings were consistent with her having had a forceful sexual encounter. The examining physician testified that he performed a vaginal swab on the victim, and the semen sample collected was sent for DNA profiling. The forensic expert who performed the DNA testing testified that DNA on the vaginal swab from the victim was consistent with the DNA test performed on the blood sample recovered from Russey. This alone was substantial evidence to show that the victim sustained a rape and that Russey was the perpetrator. Therefore, we affirm the trial court's ruling rejecting Russey's motion for directed verdict.

Pursuant to Ark. Sup. Ct. R. 4-3(h), the record has been examined and reviewed for all errors prejudicial to Russey, and none was found.