Jonathan B. GONDER *v.* STATE of Arkansas

CA CR 05-262                                                    234 S.W.3d 887

Court of Appeals of Arkansas
Opinion delivered May 3, 2006

*Brown & McKissic, LLP*, by: *Gene E. McKissic*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Jonathan B. Gonder appeals his convictions for possession of controlled substances (marijuana and cocaine) with intent to deliver. This appeal follows his entry of a conditional guilty plea after the trial court denied his motion to suppress. The State argues that we do not have jurisdiction to consider appellant's appeal because appellant's conditional guilty plea

does not conform with Ark. R. Crim. P. 24.3(b) (2005), and asks that we dismiss the appeal. We do not dismiss the appeal. However, upon consideration of the merits, we affirm appellant's convictions.

Whether a defendant has complied with Rule 24.3(b) is a jurisdictional question. *See Ray v. State*, 328 Ark. 176, 941 S.W.2d 427 (1997). The State filed a motion to dismiss for lack of jurisdiction, prior to this appeal being submitted to our court, which we denied on January 11, 2006. Upon the State's reassertion of its motion to dismiss, we again consider the jurisdictional question.

The general rule is that when a defendant pleads guilty to a charge, he or she waives the right to appeal that conviction. *Green v. State*, 334 Ark. 484, 978 S.W.2d 300 (1998). For relevant purposes before us, only a conditional plea pursuant to Rule 24.3(b) enables a defendant to retain the right to appeal an adverse suppression ruling. Ark. R. App. P.–Crim. 1(a) (2005); *Barnett v. State*, 336 Ark. 165, 984 S.W.2d 444 (1999). Rule 24.3(b) states:

> With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of an adverse determination of a pretrial motion to suppress evidence. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

Our supreme court has interpreted Rule 24.3(b) to require strict compliance with the requirement that the right to appeal be reserved in writing. *Barnett v. State, supra*. This is so even when there has been an attempt to enter a conditional plea at the trial court level. *Ray v. State, supra*. In addition, the writing must be contemporaneous with the defendant reserving his or her right to appeal. *Tabor v. State*, 326 Ark. 51, 930 S.W.2d 319 (1996). We also look for an indication that the conditional plea was entered with the approval of the trial court and the consent of the prosecuting attorney. *Noble v. State*, 314 Ark. 240, 862 S.W.2d 234 (1993).

In this instance, the transcript reveals the following pertinent facts. After a search for and seizure of marijuana and cocaine from appellant's home in March 2002, his attorney filed a motion to suppress, which was ultimately denied in December 2002. In December 2004, the prosecution and defense entered into plea negotiations. On December 9, 2004, a document was filed,

entitled "Report of Plea Negotiations," which reflected that for the two drug charges, the prosecutor was recommending two ten-year sentences, for appellant to forfeit any seized property, and for appellant "to remain free on bond through the pendency of his appeal of the Court's denial of his Motion to Suppress Evidence." The opening paragraph of the document reflected that both the State and the defendant and his counsel had agreed to dispose of this case by a "plea of guilty CONDITIONAL" subject to the approval of the trial court. This document was signed by the prosecuting attorney, appellant's attorney, and appellant.

On December 14, 2004, appellant formally entered his negotiated plea of guilty in open court, with the trial judge, the prosecutor, defense counsel, and appellant present. The trial judge announced the crimes with which appellant had been charged and the range of punishments for each crime, asked appellant if he was satisfied with his representation, and verified that appellant was knowingly and intelligently waiving his right to a jury trial. The prosecutor asked the trial judge if she had a copy of the plea; the trial judge responded affirmatively. The trial judge recited verbatim the "deal" contained in the Report of Plea Negotiations, including that appellant would be free pending his appeal of the suppression issue, and she asked appellant if he had been promised anything else in order to acquire a guilty plea from him. Appellant responded, "no." After reading the specific details of the plea negotiation from the Report, the trial judge asked if that was his understanding of the plea negotiation. Appellant affirmed that it was and that he intended to plead guilty in line with that offer. The judge asked defense counsel if he concurred in the plea agreement; defense counsel said that he did. The judge accepted the recommendation of the State, sentenced appellant to concurrent ten-year sentences, and reaffirmed to appellant that he would be free during the appeal of his motion to suppress.

A judgment containing the two convictions was signed by the trial judge and filed on December 28, 2004, reflecting the sentences imposed and that each was a "negotiated plea of guilty (CONDITIONAL)." The judgment also recited:

**SPECIAL CONDITIONS: DEFENDANT SHALL FORFEIT ALL PROPERTY SEIZED. DEFENDANT SHALL REMAIN FREE ON BOND THROUGH THE PENDENCY OF HIS APPEAL OF THE COURT'S DENIAL OF MOTION TO SUPPRESS EVIDENCE.

Appellant filed a timely notice of appeal on January 13, 2005, appealing the denial of his motion to suppress and the judgment of convictions.

We hold that this conditional plea is sufficient to confer appellate jurisdiction in our court. Therefore, we deny the State's second motion to dismiss. The Report of Plea Negotiations reflected what was agreed between the State and appellant; it was denoted a conditional guilty plea specifically noting that appellant would be free during his appeal of the suppression issue; and it was in writing, signed by the prosecutor, defense counsel, and appellant. This Report was provided to the trial court for the actual entry of the plea on December 14, 2004. The contents of the Report were recited in open court by the trial court and agreed to by appellant and the State, as well as by the trial court by verbal assent. The judgment that followed days later, signed by the trial judge and filed of record, reflected without ambiguity that these sentences were conditional negotiated pleas, with capitalized type emphasizing that appellant would be free pending the appeal of the motion to suppress. We are convinced that the Report was a sufficient writing to memorialize appellant's intent to enter a conditional plea.

Further, we are convinced that because the Report was presented in open court at the plea hearing and was accepted by the trial court in total, this rendered it contemporaneous within the case law construing Rule 24.3(b). Even assuming that the judgment that was filed two weeks later would not be considered "contemporaneous" to the plea, the judgment does nothing but reinforce what occurred at the plea hearing where the Report was accepted by the trial court. *Compare Hill v. State*, 81 Ark. App. 178, 100 S.W.3d 84 (2003). On these facts, we hold that there was compliance with Ark. R. Crim. P. 24.3 establishing appellate jurisdiction.

This brings us to the merits of the appeal. Appellant contends that the trial court clearly erred in not granting his motion to suppress. We disagree. On appeal from the denial of a motion to suppress, we conduct a de novo review based upon the totality of the circumstances, reviewing findings of historical fact for clear error, giving due weight to inferences drawn by the trial court. *See Thornton v. State*, 85 Ark. App. 31, 144 S.W.3d 766 (2004). Thus, the trial court's ruling will not be reversed unless it is clearly

erroneous. *See id.* In this instance, the search of appellant's house came as the result of the police obtaining consent to enter and then searching the premises. There is a presumption of unreasonableness regarding warrantless entry into a home, but it may be overcome if the State obtains consent from the homeowner. *See Carson v. State,* 363 Ark. 158, 211 S.W.3d 527 (2005); Ark. R. Crim. P. 11.1. The State bears the burden to demonstrate clear and positive testimony that consent was freely and voluntarily given. *See Medlock v. State,* 79 Ark. App. 447, 89 S.W.3d 357 (2002). Consent must not be the product of express or implied coercion or duress. *Russey v. State,* 336 Ark. 401, 985 S.W.2d 316 (1999).

With these statements of the law, we proceed to examine the interaction between appellant and the police on the night of the search. Appellant's home was under surveillance by the Pine Bluff Police Department when an officer observed a vehicle leave the residence. Upon following that vehicle, the police tried to initiate a stop, but the driver fled the vehicle, abandoning a one-pound bag of marijuana in plain view inside the vehicle. Close in time to that stop, other officers stopped another vehicle that had left the residence; appellant's wife was driving.

Officer Whitfield told appellant's wife that he wanted to follow her back to their house to talk to appellant about drugs being in their house. The wife was cooperative and complied, and they drove back to the Gonder residence; it was around midnight. Officer Whitfield said he approached the door, knocked, and appellant came to the door. Appellant's wife was with Officer Whitfield at the time. The officer asked to come in, and appellant let him. Officer Whitfield said he immediately smelled a strong odor of marijuana when the door was opened. He told appellant that he had just stopped a car that came from appellant's house; that there was a pound of marijuana in the car; and that he suspected there were more drugs in appellant's house.

Upon entry, the officer saw two men sitting in the living room, and one had a bag of marijuana in plain view; there was also a roach clip in plain view. Appellant at first said that the young man, whose car was found with the marijuana in it, had set him up. Officer Whitfield said he asked appellant for consent to search the house, but if none were given and appellant wanted him to leave, he would leave and obtain a search warrant. Appellant asked the officer to come into the kitchen to speak in private, and appellant

expressed concern about his wife and children. Officer Whitfield told appellant that the smell of marijuana smoke was already in the house, and that he should not have his children there if he was going to sell or smoke the drug; appellant apologized to the officer for that. When appellant asked the officer to let his wife and kids go, Officer Whitfield assured appellant that he was only there regarding other drugs that might be in the house. After some discussion with the officer, appellant began taking responsibility for the marijuana that the young man had in the living room. The officer verbally Mirandized appellant. The officer added that if appellant was cooperative and gave consent to search, then neither appellant or his family would be taken into custody that night. The officer said that when he offered to leave and get a search warrant, appellant told him to come back and talk again, whereupon he agreed to the search. At 12:45 a.m., appellant signed the consent form to search. Following that, appellant said he did not want his house "torn up" like it was the last time his house was searched. Thereupon, he reached up to pull the cord attached to the disappearing stairway leading to the attic, which was where appellant kept approximately eighteen pounds of marijuana and a small amount of cocaine.

Officer Whitfield agreed that he and appellant had a long conversation inside the house. However, he stated that he never was confrontational, nor did he ever state that appellant was legally obligated to cooperate, having more than once offered to leave to get a warrant. The officer denied ever threatening appellant or his family in order to get consent, and he confirmed that no one was taken to jail that night.

The State entered into evidence the "Consent To Search" form, signed by appellant, which delineated appellant's constitutional rights, specifically noting appellant's right to refuse to give consent and to revoke consent and stop the search at any time, and stating affirmatively that permission was given "voluntarily and without threats, coercion or promises from any agent of the City of Pine Bluff Police Department."

Mrs. Gonder testified in contradiction to the officer, stating that she essentially felt bullied to return to the house with officers following her. She also said that she saw Officer Whitfield push open their door and enter against her wishes, and also against her husband's wishes when he saw the officer coming inside. She recalled that she and her husband repeatedly told the officer to

leave, but he would not. She said the officer threatened that she and the two men in the house would be going to jail, and their kids would be taken away, if appellant did not sign a consent. She agreed that her husband signed the consent, but that he was forced by the threats. Appellant's testimony mirrored his wife's.

Appellant argues on appeal that there were no exigent circumstances that would permit entry and search of the house pursuant to Ark. R. Crim. P. 12.1, and that the consent was obtained under duress.[1] Therefore, appellant contends that the motion to suppress was denied in error. We agree that Arkansas Rule of Criminal Procedure 12.1 would not be a valid basis to uphold the search in this instance because there was no emergency relating to bodily harm or destruction of evidence that would create a warrant exception. Indeed, the State did not elect to argue this Rule as a basis to support the search. Instead, we focus on the second argument asserted, which is whether the State carried its burden to demonstrate that consent to search was freely and voluntarily given.

Appellant agrees that he gave both verbal and written consent to search, but he argues that there is no corroborating evidence of the officer's testimony about what led to the consent being given. Because individuals have a high expectation of privacy in their homes, our courts require voluntary consent absent other grounds to effectuate a warrantless search of the home. *See Payton v. New York*, 445 U.S. 573 (1979). Indeed, physical intrusion into the privacy of a person's residence absent a warrant is the primary evil that the Fourth Amendment seeks to eradicate. *See United States v. Miller*, 933 F. Supp. 501 (M.D. N.C. 1996). He argues that his and his wife's testimony demonstrate that they were bullied and that appellant gave consent only after threats of incarceration and of taking the children from the home. This argument focuses on credibility determinations that we are not at liberty to disturb on appeal. *Bogard v. State*, 88 Ark. App. 214, 197 S.W.3d 1 (2004). The validity of consent is a fact question determined by the totality of the circumstances. *Medlock v. State*, 79 Ark. App. 447, 89 S.W.3d 357 (2002). Based upon the testimony

---

[1] Appellant does not argue on appeal that the initial entry into the doorway of the house was constitutionally infirm. Instead, his argument focuses on the acquisition of verbal and written consent inside the house. Therefore, we do not address or offer any opinion on the legality of the initial entry into the house.

presented by the officer, which the trial court was entitled to believe, we cannot say that the trial court's denial of the motion to suppress was clearly erroneous.

Affirmed.

PITTMAN, C.J., and BAKER, J., agree.